Martin A. **VILLALON, Jr.,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–1010–CR–544.

Court of Appeals of Indiana.

Aug. 30, 2011.

Rehearing Denied Nov. 21, 2011.

James Foster, Office of James Foster, P.C., Hammond, IN, Marc W. Martin, Marc Martin, Ltd., Chicago, IL, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code § 35–42–1–1.

## OPINION

BAILEY, Judge.

### Case Summary

Martin A. Villalon, Jr. ("Villalon") appeals his conviction and sentence for Murder, a felony.[1] We affirm.

### Issues

Villalon presents six issues for review:

I.    Whether Indiana's juvenile waiver statute is unconstitutional because it deprives juveniles of a Sixth Amendment right to have a jury determine facts supporting enhanced punishment for an offense;

II.    Whether the jurisdictional waiver to adult court was supported by sufficient findings having evidentiary support;

III.    Whether Villalon was denied effective assistance of counsel for failure to present an alibi defense;

IV.    Whether the trial court abused its discretion by excluding as an exhibit a printout of a social networking page belonging to a prosecution witness;

V.    Whether Villalon was deprived of his Sixth Amendment right to a jury trial because alternate jurors were instructed that they were permitted to discuss evidence during recesses, consistent with Indiana Jury Rule 20(a)(8); and

VI.    Whether the sixty-year sentence is a product of an abuse of the trial court's discretion or is inappropriate.

## Facts and Procedural History

The evidence most favorable to the verdict reveals that, on August 22, 2008, fifteen-year-old Villalon chased down fifteen-year-old John Shoulders ("Shoulders") and fatally shot him because Villalon mistakenly believed that Shoulders was a Vice Lord gang member.

On April 15, 2009, the State filed a petition alleging that Villalon was a juvenile delinquent because he had knowingly or intentionally killed Shoulders. Contemporaneously, the State requested waiver of jurisdiction from the juvenile court to a court having jurisdiction if the act had been committed by an adult. Following a hearing, the juvenile court waived jurisdiction to criminal court. Villalon was charged with murder. He moved to dismiss the murder charge, alleging that he was entitled under the United States Constitution to have a jury determine the facts underlying the waiver of jurisdiction decision. The motion to dismiss was denied. His motion to reconsider was likewise denied.

Villalon was brought to trial before a jury and was convicted as charged. On July 26, 2010, the trial court sentenced Villalon to sixty years imprisonment. Villalon filed a motion to correct error, which was denied. He now appeals.

## Discussion and Decision

### I. Constitutionality of Waiver of Jurisdiction Statute

Villalon sought dismissal of the murder charge against him, contending that Indiana's juvenile waiver statute is constitutionally infirm. The trial court disagreed. Villalon now argues that, because his trial in adult court, as opposed to his retention in the juvenile justice system, greatly increased his punishment, he was entitled to have a jury determination of facts supporting the enhancement.

Whether a statute is constitutional on its face presents a question of law, for which de novo review is appropriate. *State v. Moss–Dwyer,* 686 N.E.2d 109, 110 (Ind.1997). We begin with the presumption of constitutional validity, and thus the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional. *Id.* at 112.

Indiana Code Section 31–30–3–4 provides:

> Upon motion of the prosecuting attorney and after full investigation and hearing, the juvenile court shall waive jurisdiction if it finds that:
>
> (1) the child is charged with an act that would be murder if committed by an adult;
>
> (2) there is probable cause to believe that the child has committed the act; and
>
> (3) the child was at least ten (10) years of age when the act charged was allegedly committed;
>
> unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system.

Villalon claims that the forgoing statute deprived him of his rights under the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment.[2] He relies upon *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which set forth the general rule that, "any fact that increases the penalty for a crime

---

2. The Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]"

beyond the prescribed statutory maximum must be submitted to a jury."

In *Apprendi*, the defendant had fired bullets into the home of an African–American family and had pled guilty to a weapons possession charge. *Id.* at 469–70, 120 S.Ct. 2348. The trial court, finding by a preponderance of the evidence that the shooting had been racially motivated, increased Apprendi's sentence pursuant to New Jersey's hate crimes statute. Apprendi appealed, contending that "the Due Process Clause of the United States Constitution requires that the finding of bias upon which his hate crime sentence was based must be proved to a jury beyond a reasonable doubt." *Id.* at 471, 120 S.Ct. 2348. The United States Supreme Court agreed that the Sixth and Fourteenth Amendments required that a jury must make the determination of racial motivation. *Id.* at 490, 120 S.Ct. 2348. Such fact was the "functional equivalent" of an element of a greater offense. *Id.* at 494, 120 S.Ct. 2348.

More recently, in *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 714, 172 L.Ed.2d 517 (2009), the United States Supreme Court declined to extend the *Apprendi* rule in the context of consecutive versus concurrent sentencing. The Court decided that the Sixth Amendment does not preclude states from assigning to judges, rather than to juries, the task of finding facts necessary to impose consecutive, rather than concurrent, sentences for multiple offenses. *Id.* In reaching its decision, the Court looked to "the scope of the constitutional jury right informed by the historical role of the jury at common law" and disagreed with the defendant's suggestion that "the federal constitutional right attaches to every contemporary state-law 'entitlement' to predicate findings." *Id.* at 718, 129 S.Ct. 711. In addition to the historical role of the jury, the Court also was mindful of

state sovereignty, including "the authority of States over the administration of their criminal justice systems." *Id.*

The Court observed, "The historical record demonstrates that the jury played no role in the decision to impose sentences consecutively or concurrently. Rather, the choice rested exclusively with the judge." *Id.* at 717, 129 S.Ct. 711. Because the decision to impose consecutive or concurrent sentences was not within the jury's historical function, and because of the principles of federalism, legislative reforms regarding multiple sentences did not "implicate the core concerns that prompted [the] decision in *Apprendi.*" *Id.* at 718, 129 S.Ct. 711. "*Apprendi*'s core concern [is] a legislative attempt to 'remove from the [province of the] jury' the determination of facts that warrant punishment for a specific statutory offense." *Id.* at 718, 129 S.Ct. 711 (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348). Ultimately, the Court reiterated: "The jury trial right is best honored through a 'principled rationale' that applies the rule of the *Apprendi* cases 'within the central sphere of their concern.'" *Id.* at 719, 129 S.Ct. 711 (quoting *Cunningham v. California*, 549 U.S. 270, 295, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007)). The Court thus declined to extend *Apprendi* to an area of criminal sentencing—concurrent or consecutive sentencing—in which the jury had traditionally played no role.

■ The Sixth Amendment right to a jury trial does not apply to juvenile delinquency proceedings. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). The New Mexico Supreme Court recently observed in *State v. Rudy B.*:

> [T]he findings in the *Apprendi* line of cases uniformly occurred in the *adult* criminal context[.] ... The Supreme Court has traditionally given states

wider latitude in adopting particular trial and sentencing procedures for juveniles—including whether to have a jury trial at all.... Given that *Ice* expressly instructs us to consider principles of federalism and state sovereignty in determining whether to apply *Apprendi,* we find this distinction particularly significant.

149 N.M. 22, 243 P.3d 726, 735 (2010) (emphasis in original), *cert. denied,* —— U.S. ——, 131 S.Ct. 2098, 179 L.Ed.2d 898 (2011).

█ The waiver statute here at issue incorporates a presumption that a child of age ten or older alleged to have committed an act that would be murder if committed by an adult will be tried in adult court. Ind.Code § 31–30–3–4. The child is provided with the opportunity to present evidence to the juvenile court that it would be in the best interests of the child and of the community to have the child remain within the juvenile justice system. Making findings of best interests has been entrusted, since the enactment of the statutory scheme, to the juvenile court judge, and not a jury. Villalon does not contend that the statute removed from the jury a task with which it had historically been entrusted.

As a practical matter, a child who is alleged to have committed a delinquent act and is not retained in the juvenile justice system but is waived into adult court will (if found guilty) face harsher consequences for his or her conduct. Nonetheless, *Ice* makes clear that not all judicial fact-finding ultimately resulting in an increased term of incarceration invades the province of the jury. As previously observed, Villalon provides no argument as to how our juvenile waiver statute might be understood to encroach upon the jury's traditional domain. Furthermore, the waiver statute does not set forth the elements of

an offense, does not provide for a determination of guilt or innocence, and is not directed to consequences *after* adjudication of guilt. It does not provide a sentencing enhancement correlated with the State's proof of a particular fact. Accordingly, we conclude that the statute does not implicate the core concerns of *Apprendi.* We will not, as urged by Villalon, declare it to be unconstitutional upon that basis.

### II. Sufficiency of Waiver Findings

█ Villalon next argues that the juvenile court made inadequate findings to support his waiver to adult court. The juvenile court entered perfunctory findings, specifically:

The child is charged with an act that would be murder if committed by an adult.

(a) There is probable cause to believe that the child has committed the act.

(b) The child was ten (10) years of age or older when the act charged was allegedly committed and

(c) The Court finds that it would not be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system.

(App.11.) The waiver order "must not merely recite statutory language." *Gerrick v. State,* 451 N.E.2d 327, 329 (Ind. 1983). Factual support and reasons for a waiver must appear in *either* the face of the waiver order or in the record of the waiver hearing. *Id.* at 329–30 (emphasis added). Accordingly, "[t]he absence from the waiver order of the particular facts justifying waiver does not necessarily invalidate the waiver." *Vance v. State,* 640 N.E.2d 51, 57 (Ind.1994).

█ Where there is adequate factual support in the record, it is within the juvenile court's province to weigh the effects of retaining or waiving jurisdiction,

and to determine which alternative is the more desirable. *Id.* We do not reweigh the evidence or judge the credibility of witnesses. *K.M. v. State,* 804 N.E.2d 305, 308 (Ind.Ct.App.2004), *trans. denied.* The juvenile court's decision to waive jurisdiction will not be disturbed absent an abuse of discretion. *Vance,* 640 N.E.2d at 57.

■ The waiver hearing record contains evidence that Villalon was over ten years of age. Also, the State presented ample evidence to establish probable cause, including evidence that Villalon had threatened Shoulders and later confessed to four people that he had killed Shoulders. Villalon does not challenge the adequacy of factual support for these statutory prerequisites for waiver. Rather, Villalon focuses upon the best-interests/community safety and welfare evidence. He argues that his lack of a criminal record and his minor juvenile history (limited to truancy and property damage) leads solely to the conclusion that he should have been retained in the juvenile justice system.

■ The burden to present evidence that waiver is not in the best interests of the juvenile or of the safety and welfare of the community remains at all times upon the juvenile seeking to avoid waiver. *Hagan v. State,* 682 N.E.2d 1292, 1295 (Ind. Ct.App.1996). As to Villalon's best interests, the waiver summary indicates that the committee of probation officers considered alternative placements but concluded that the juvenile system did not have appropriate options for rehabilitating Villalon and further noted that he did not have identified psychological or mental health issues that would benefit from treatment in the juvenile system.

As for the safety and welfare of the community, there is conflicting evidence. Although Villalon had very limited juvenile history, he reported involvement "with gang activity sometime between the age of 14 years to 15 years." (Supp.App. At 29.) He also reported that the members pressured him to sell marijuana. He tried alcohol at age fifteen and first used marijuana in the sixth grade. (Supp.App. at 29.) After consideration of a forensic evaluation by Dr. Gary Durak, the probation department recommended that Villalon be waived to adult court "due to the heinous nature of the offense." (St.Ex.21, pg.5.)

The nature of the offense was described by Officer Ezequiel Hinojosa as the State elicited evidence of probable cause at the waiver hearing. Officer Hinojosa testified that he had information suggesting that Villalon and a companion had pursued Shoulders and demanded that he throw down a particular gang sign. When Shoulders declined to do so and tried to flee on his bicycle, he was shot four times, with two bullets exiting his body.

In light of the foregoing, we cannot conclude that the statutory requirements for waiver were unmet. We find no abuse of discretion in the waiver decision.

### III. Assistance of Counsel

Villalon filed a motion to correct error, alleging that he was denied the effective assistance of trial counsel for counsel's failure to present an alibi defense. After a hearing at which Villalon submitted numerous affidavits regarding his attendance at a family birthday party on the date Shoulders was killed, the motion to correct error was denied. Villalon contends that the denial of his motion was an abuse of discretion because the State did not submit evidence to contradict his alibi witnesses.

To demonstrate ineffectiveness of counsel, a defendant must establish the two components set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, a defendant must show that counsel's performance was

deficient." *Id.* at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id.* "Second, a defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial," that is, a trial where the result is reliable. *Id.* To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.*

▇▇▇▇ Further, we "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State,* 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategy and tactics. *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001), *cert. denied,* 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002). In addition, counsel's conduct is assessed upon facts known at the time and not through hindsight. *State v. Moore,* 678 N.E.2d 1258, 1261 (Ind.1997), *cert. denied,* 523 U.S. 1079, 118 S.Ct. 1528, 140 L.Ed.2d 678 (1998).

Villalon produced affidavits from numerous individuals (predominantly but not exclusively family members), each averring that he or she had been present with Villalon at his home and as part of a family birthday celebration on August 22, 2008, including the time of Shoulders' murder.[3] Some affiants reported Villalon arriving home at 3:15 to 3:30 p.m. A classmate averred that, at 4:15, he had heard Villalon's mother instruct him to get ready for the birthday celebration. Villalon's stepfather and aunt averred that they had been with Villalon continuously from approximately 3:30 p.m. until the late evening hours. Villalon's grandmother averred that Villalon and his mother had arrived at the grandmother's house to pick her up at approximately 4:45 to 5:00 p.m. According to Villalon, some or all of these persons were known to trial counsel and had been available to testify at trial, yet counsel had informed Villalon and his parents that "the defense would not be presenting any alibi evidence." (App.174.)

▇▇▇▇ The failure to present an alibi defense is not necessarily ineffective assistance of counsel. *D.D.K. v. State,* 750 N.E.2d 885, 890 (Ind.Ct.App.2001). At the hearing upon the motion to correct error, trial counsel was not called to testify. As such, no record has been developed as to trial counsel's strategy or reasons underlying his decision not to offer an alibi defense. We decline to speculate. *See Whitener v. State,* 696 N.E.2d 40, 42 (Ind. 1998) ("We will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best.")

As previously observed, counsel is presumed to have rendered adequate assistance. *Timberlake,* 753 N.E.2d at 603. The State is not required to establish counsel's proficiency. Villalon has not overcome the presumption of adequacy.

---

**3.** Evidence at trial had disclosed that Shoulders placed a cell phone call at 4:32 p.m., a construction worker heard shots at approximately 4:45 p.m., and a 9–1–1 call reporting gunfire was placed at 4:49 p.m.

## IV. Exclusion of Evidence

The State called Becky Clemens ("Clemens") as a prosecution witness. Clemens testified that Villalon stopped at her house on August 22, 2008, and asked for Shoulders. According to Clemens' testimony, when Clemens asked why Villalon was looking for Shoulders, Villalon responded that Shoulders was "going to get his ass beat on the G" and this was because "he's claiming Vice Lord." (Tr. 112.)

Both the prosecution and the defense explored Clemens' former connections to gang members.[4] However, the trial court excluded Villalon's proffered exhibit, a printout from Clemens' My Space account, which contained some reference to Spanish Gangster Disciples.

■■■■ We review a trial court's determination of admissibility of evidence for an abuse of discretion and will reverse only where the decision is clearly against the logic and effect of the facts and circumstances present. *Smith v. State,* 754 N.E.2d 502, 504 (Ind.2001). Evidence of bias, prejudice, or ulterior motives, on the part of a witness, is relevant at trial because it may discredit the witness or affect the weight given to the witness's testimony. *Kirk v. State,* 797 N.E.2d 837, 840 (Ind.Ct.App.2003), *trans. denied.*

Clemens testified that she had previously had boys living in her house who were members of the Spanish Gangster Disciples. She was shown a copy of her My Space page, and admitted to its accuracy. She also admitted that she had, on My Space, described her mood as "loved by all G's." (Tr. 143.) To Clemens, "g's" meant "gangsters." (Tr. 143.) Arguing for admission of the My Space page, Villalon's counsel stated:

she indicated some, basically, connections by people living in her house to certain gangsters, but this makes it much more clear that she is a gangster mother at heart.

(Tr. 548.) Thus, Villalon did not contend that additional relevant information was contained within the exhibit, only that it would have made a more visible impression upon the jurors.

■■■■ The State contends that the printed My Space page would have been merely cumulative of evidence already admitted and thus its exclusion did not prejudice Villalon's substantial rights. *See Sylvester v. State,* 698 N.E.2d 1126, 1130 (Ind.1998) (holding that, when wrongfully excluded evidence is merely cumulative of other evidence presented, its exclusion is harmless error). We agree with the State. Villalon was able to elicit Clemens' admissions that she had previously closely associated with gang members. She verified the accuracy of her My Space page including the references that might indicate a bias toward gangsters or, more particularly, Spanish Gangster Disciples. The exclusion of cumulative evidence is at most harmless error.

## V. Alternate Juror Participation in Discussions

■■■■ Villalon requested that the alternate jurors be instructed not to participate in pre-deliberation jury panel discussions. Instead, the trial court instructed the jury consistent with the language of Indiana Jury Rule 20(a)(8), which provides that jurors, including alternates, are permitted to discuss the evidence among themselves in the jury room during recesses from trial when all are present, as long as they re-

---

4. Clemens testified that she no longer associated with gang members, after one young man was killed at her residence.

serve judgment about the outcome of the case until deliberations commence. Villalon argues that discussions are equivalent to deliberations and therefore he was denied his right to a jury trial under the Sixth Amendment to the United States Constitution.

This Court has, on two occasions, rejected this same challenge to Jury Rule 20. *See Rice v. State*, 916 N.E.2d 962, 965–66 (Ind.Ct.App.2009); *Weatherspoon v. State*, 912 N.E.2d 437, 439–41 (Ind.Ct.App.2009), *trans. denied.* As the *Weatherspoon* panel observed:

> Our Supreme Court has unambiguously made a distinction between discussions and deliberations. We are not at liberty to rewrite the rules promulgated by our Supreme Court.

*Id.* at 441. Accordingly, we find no error, constitutional or otherwise, in the trial court's implementation of Jury Rule 20.

### VI. Sentencing

Upon conviction of Murder, Villalon faced a sentencing range of forty-five years to sixty-five years, with the advisory sentence being fifty-five years. *See* Ind. Code § 35–50–2–3. Accordingly, his sixty-year sentence is five years greater than the advisory. Villalon presents two sentencing challenges, first arguing that the trial court abused its discretion in the consideration of aggravating and mitigating circumstances, and second arguing that his sentence is inappropriate.

*Aggravating and Mitigating Circumstances.*

Villalon alleges that the trial court failed to give due weight to his youth, lack of criminal history, and low I.Q. score (71 points). "So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *clarified on other grounds*, 875 N.E.2d 218 (Ind.2007). This includes the finding of an aggravating circumstance and the omission to find a proffered mitigating circumstance. *Id.* at 490–91. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." *Id.* at 491.

The trial court's reasons must be supported by the record and must not be improper as a matter of law. *Id.* However, a trial court's sentencing order may no longer be challenged as reflecting an improper weighing of sentencing factors. *Id.* A trial court abuses its discretion if its reasons and circumstances for imposing a particular sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Hollin v. State*, 877 N.E.2d 462, 464 (Ind.2007). Here, the trial court recognized Villalon's youth, lack of criminal history, and "level of cognitive functioning as indicated by the psychological reports" as mitigating circumstances. (Sent. Tr. 157.) To the extent that Villalon urges reweighing of the mitigating circumstances, the argument is unavailable to him. *Anglemyer*, 868 N.E.2d at 491.

Villalon also challenges the trial court's consideration of the heinousness of the crime as an aggravating circumstance. The trial court noted that Villalon had sought out his victim, chased him down and then shot him. A trial court may properly consider the manner in which the crime was committed in reaching its sentencing determination. *Anglemyer*, 868 N.E.2d at 492. Villalon has demonstrated no abuse of discretion.

*Appropriateness of Sentence.*

Under Indiana Appellate Rule 7(B), this "Court may revise a sentence

authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind.2008). A defendant " 'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.' " *Anglemyer*, 868 N.E.2d at 494 (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006)).

 As for the nature of the offense, Villalon hunted for his victim, inquiring of Clemens as to Shoulders' whereabouts and proclaiming that he would be beaten "on the g" because he was "claiming Vice Lord." (Tr. 112–13.) Villalon pursued Shoulders and fired four shots into his neck and back. Three of these shots—which pierced his heart and lungs and severed his spinal cord—were fatal shots. It was a senseless crime; not only was it a gang-related execution, but it was also a product of misinformation. Afterward, Villalon displayed his gun and boasted to gang members and associates that he had "popped" Shoulders. (Tr. 211.)

As to the character of the offender, Villalon has some history of juvenile offenses. He was not known to be a gang member, but associated with gang members. He had previously been persuaded by gang members to engage in illegal activities. He was willing to conceal evidence of his crime, stating to his companions that he would hide the gun on a nearby street.

In sum, there is nothing in the nature of the offense or the character of the offender to persuade us that the sixty-year sentence is inappropriate.

## Conclusion

Villalon was not denied his Sixth Amendment right to a jury trial. He has not established that his waiver to adult court lacked evidentiary support for the statutory prerequisites. He has failed to demonstrate ineffectiveness of trial counsel or reversible error in the admission of evidence or the conduct of the trial. Finally, Villalon's sixty-year sentence is not inappropriate.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.