[No. 66577-4-I.   Division One.   July 16, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. QUINCY TYREE CHILDRESS, *Appellant*.

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*Mark K. Roe, Prosecuting Attorney*, and *Mary K. Webber, Deputy*, for respondent.

524

¶1 DWYER, J. — In Washington, a juvenile court may decline jurisdiction, thus transferring the matter for adult criminal prosecution, where the court determines by a preponderance of the evidence that declination would be in the best interest of the juvenile or the public. In making this determination, the court must consider the eight *Kent*[1] factors originally set forth by the United States Supreme Court. The juvenile court's declination decision is a jurisdictional determination, not a sentencing determination. Indeed, as the juvenile must be found guilty of the alleged offense beyond a reasonable doubt prior to receiving any sentence, the declination decision itself does not subject the juvenile to any sentence whatsoever. Accordingly, neither the state nor the federal constitution requires the facts supporting declination to be proved to a jury beyond a reasonable doubt.

¶2 Here, the juvenile court determined that declining jurisdiction over Quincy Childress would be in the best interest of Childress or the public. In so doing, the court properly considered the eight factors set forth in *Kent*. Childress's constitutional rights were not thereby violated. Because Childress's additional contention, that the juvenile court abused its discretion in declining jurisdiction, is also without merit, we affirm.

I

¶3 Quincy Childress was charged in juvenile court with rape in the second degree based upon a November 12, 2009 incident involving A.P., a counselor working at Cypress House. Cypress House is a home for juvenile sex offenders

---

[1] *Kent v. United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966).

where Childress was living at that time. A.P. reported to police that "she was sitting on a couch in Cypress House when Childress put his thumbs on her throat and attempted to choke her." She further reported that Childress sat on top of her and put his hand under her shirt and bra. Childress "then put his hand down A.P.'s . . . pants and penetrated her vagina with his finger." A.P. was able to escape when a co-worker entered the house. Childress was 15 years old at the time of the incident.

¶4 The State filed a motion requesting that the juvenile court decline jurisdiction and transfer the case for adult criminal prosecution. In its decline of jurisdiction report, the probation department recommended that the trial court decline jurisdiction. Childress filed a memorandum in opposition to declination, contending that the community could be adequately protected without a decline of jurisdiction by the juvenile court.

¶5 At an April 14, 2010 hearing, the court considered the eight factors set forth in *Kent*. Based upon its consideration of those factors, the juvenile court declined jurisdiction. Childress moved for reconsideration of the juvenile court's declination order; the court denied his motion. Childress was thereafter convicted of rape in the second degree in the superior court and sentenced to a term of incarceration of 84 months to life.

¶6 He appeals, assigning error only to the juvenile court's declination of jurisdiction.

II

¶7 Childress contends that the declination procedure violated his federal constitutional rights to due process and to a jury trial because the juvenile court found the facts necessary to decline jurisdiction by a preponderance of the evidence. Such facts, he asserts, are facts essential to punishment that must be proved to a jury beyond a reasonable doubt. We have previously rejected this contention. We now do so once more.

¶8 Striking down a hate crime statute that permitted a defendant to be sentenced beyond the statutory maximum based upon a factual finding made by the trial court, the United States Supreme Court in *Apprendi v. New Jersey* held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Whether the fact is labeled an "element" or a "sentencing factor," the Court explained, is not of consequence. *Apprendi*, 530 U.S. at 494. "[T]he relevant inquiry is one not of form, but of effect— does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494. The statute invalidated therein, the Court determined, violated the defendant's constitutional rights to due process and to a jury trial, which, collectively, entitle the accused to have a jury determine beyond a reasonable doubt every element of a charged offense. *Apprendi*, 530 U.S. at 477, 490.

¶9 The Court has since applied the rule set forth in *Apprendi* to invalidate various sentencing schemes, in each case determining that the facts authorizing the imposition of a sentence greater than that authorized by a jury verdict or guilty plea were required to be found by a jury beyond a reasonable doubt. *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007) (holding that California's indeterminate sentencing law, which authorized the trial court judge to find facts exposing a defendant to an elevated upper term sentence, violated the right to a jury trial); *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (holding that facts triggering an elevated sentence under the then-mandatory Federal Sentencing Guidelines must be proved to a jury beyond a reasonable doubt); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (invalidating a Washington statute authorizing the imposition of a sen-

tence beyond the standard range for the offense based upon findings made by the sentencing judge); *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002) (invalidating an Arizona statute that authorized the imposition of the death penalty based upon aggravating factors found by the trial court judge).

■ ¶10 We have previously addressed the application of the *Apprendi* rule to our state's declination procedure. *State v. H.O.*, 119 Wn. App. 549, 81 P.3d 883 (2003). There, H.O. contended that the Supreme Court's decisions in *Apprendi* and *Ring* "require that a juvenile court use the 'beyond a reasonable doubt' standard to determine whether to decline jurisdiction over a juvenile charged with a crime." *H.O.*, 119 Wn. App. at 552. Distinguishing *Apprendi* and *Ring*, we rejected that contention:

> We do not read *Apprendi* and *Ring* as broadly as does H.O. In those cases, either the guilt or the sentence of an accused was at issue. Neither guilt nor sentencing is at issue at the decline hearing. Rather, the hearing is designed to determine whether the case should be heard in juvenile or adult court. Neither of these cases requires that this jurisdictional determination, intended only to determine the appropriate forum for trial, must be supported by the "beyond a reasonable doubt" standard. All that is required is sufficient evidence for a judge to make the discretionary determination whether to retain or transfer jurisdiction of the case.

*H.O.*, 119 Wn. App. at 554-55 (footnote omitted). We similarly rejected H.O.'s assertion that *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), required such a result. That case "present[ed] the single, narrow question whether proof beyond a reasonable doubt is among the 'essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." *Winship*, 397 U.S. at 359. Because, we determined, "[a] declination hearing is not an adjudicatory proceeding," *Winship* was inapplicable. *H.O.*, 119 Wn. App. at 555.

¶11 Thereafter, Division Two relied on our decision in *H.O.* in holding that neither *Apprendi* nor *Blakely* apply to a juvenile decline proceeding. *In re Pers. Restraint of Hegney*, 138 Wn. App. 511, 528, 158 P.3d 1193 (2007). Acknowledging that Washington courts had not yet decided whether *Blakely* required that "a jury must find beyond a reasonable doubt that a defendant is not amenable to treatment as a juvenile before the juvenile court may decline juvenile jurisdiction," *Hegney*, 138 Wn. App. at 527, the court followed the " 'overwhelming weight of authority,' " which concluded " 'that *Apprendi* does not apply to a juvenile waiver proceeding because it is not a sentencing proceeding, but rather a determination of the court's jurisdiction.' " *Hegney*, 138 Wn. App. at 527-28 (quoting *State v. Kalmakoff*, 122 P.3d 224, 227 (Alaska Ct. App. 2005)). The court agreed with the Alaska Court of Appeals that the reasoning of these decisions " 'foreshadow[ed] that courts will not arrive at a different decision following *Blakely*.' " *Hegney*, 138 Wn. App. at 528 (quoting *Kalmakoff*, 122 P.3d at 227).[2]

---

[2] *See also United States v. Miguel*, 338 F.3d 995, 1004 (9th Cir. 2003) (holding that *Apprendi* "by its own terms" does not apply to transfer proceedings because a transfer to adult criminal court "does not 'increase the penalty . . . beyond the prescribed statutory maximum' for those crimes" (quoting *Apprendi*, 530 U.S. at 490)); *United States v. Juvenile*, 228 F.3d 987, 990 (9th Cir. 2000) (holding that transfer statutes are not analogous to statutes "increasing the potential penalties in adult criminal cases," as a transfer statute "does not *per se* increase punishment; it merely establishes 'a basis for district court jurisdiction of prosecutions to which it applies' " (quoting *United States v. David H.*, 29 F.3d 489, 491 (9th Cir. 1994))); *State v. Rodriguez*, 205 Ariz. 392, 401, 71 P.3d 919 (Ct. App. 2003) (holding that statute allowing for transfer of juvenile to adult criminal court "does not implicate *Apprendi*" because the judge's transfer determination "does not subject [the] juvenile to enhanced punishment; it subjects the juvenile to the adult criminal justice system"); *People v. Beltran*, 327 Ill. App. 3d 685, 689-90, 765 N.E.2d 1071, 262 Ill. Dec. 463 (2002) (holding that the state's transfer statute did not violate the *Apprendi* rule because the transfer hearing "determines not the minor's guilt but the forum in which his guilt may be adjudicated"); *State v. Jones*, 273 Kan. 756, 778, 47 P.3d 783 (2002) (holding that *Apprendi* does not apply to juvenile waiver hearings because the applicable statute "does not involve guilt or innocence, but involves the determination of which system will be appropriate for a juvenile offender"); *Caldwell v. Commonwealth*, 133 S.W.3d 445, 453 (Ky. 2004) (holding that the *Apprendi* rule was not implicated because "[a] juvenile transfer proceeding does not involve sentencing or a determination of guilt or innocence").

¶12 Notwithstanding the fact that we have previously determined that the *Apprendi* rule is not implicated by our state's juvenile decline procedure, Childress asserts that intervening case law renders our prior decisions no longer authoritative. He contends that the rule set forth in *Apprendi* and *Blakely*—that all facts legally essential to a defendant's punishment must be proved to a jury beyond a reasonable doubt—is sufficiently expansive to apply to the facts supporting a juvenile court's order of decline.

¶13 Recent United States Supreme Court precedent limiting the scope of that rule suggests otherwise. *See Oregon v. Ice*, 555 U.S. 160, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009). In *Ice*, the Court addressed the constitutionality of an Oregon statute requiring judges "to find certain facts before imposing consecutive, rather than concurrent, sentences." 555 U.S. at 164. The defendant asserted that his Sixth Amendment right to a jury trial was violated when consecutive sentences were imposed based upon facts found by the trial judge. *Ice*, 555 U.S. at 166. He contended that he was entitled "to have the jury, not the sentencing judge, find the facts that permitted the imposition of consecutive sentences." *Ice*, 555 U.S. at 166.

¶14 The Supreme Court disagreed, rejecting the defendant's suggestion that "the federal constitutional right attaches to every contemporary state-law 'entitlement' to predicate findings." *Ice*, 555 U.S. at 170. Rather, "[t]he jury-trial right is best honored through a 'principled rationale' that applies the rule of the *Apprendi* cases 'within the central sphere of their concern.'" *Ice*, 555 U.S. at 172 (quoting *Cunningham*, 549 U.S. at 295 (Kennedy, J., dissenting)). This "core concern," the Court explained, is the "legislative attempt to 'remove from the [province of the] jury' the determination of facts that warrant punishment for a specific statutory offense." *Ice*, 555 U.S. at 170 (alteration in original) (quoting *Apprendi*, 530 U.S. at 490). The decision to impose sentences concurrently, the Court recognized, is not "rooted in the historic jury function" of "determining

whether the prosecution has proved each element of an offense beyond a reasonable doubt." *Ice*, 555 U.S. at 163. Accordingly, the Court "declined to extend *Apprendi* to an area of criminal sentencing—concurrent or consecutive sentencing—in which the jury had traditionally played no role." *Villalon v. State*, 956 N.E.2d 697, 703 (Ind. Ct. App. 2011).

¶15 Because it limits the *Apprendi* rule to those cases directly implicating that rule's "core concern," *Ice* is significant here. Washington courts have not, since *Ice* was decided, had the occasion to consider its reasoning in evaluating the constitutionality of juvenile decline proceedings. However, other states have. *See, e.g., Kirkland v. State*, 67 So. 3d 1147 (Fla. Dist. Ct. App. 2011); *Villalon*, 956 N.E.2d 697; *State v. Andrews*, 329 S.W.3d 369 (Mo.), *cert. denied*, 131 S. Ct. 3070, 132 S. Ct. 260 (2011). In so doing, these states have concluded that the rule set forth in *Apprendi* does not apply to such proceedings.

¶16 The Supreme Court of Missouri, in upholding that state's juvenile certification statute, noted that

> [t]he courts in every jurisdiction that have juvenile-certification statutes similar to Missouri's and that have considered this issue have concluded that *Apprendi*'s rule does not apply to juvenile transfer or certification proceedings and that there is no constitutional right to a jury determination respecting the transfer of a juvenile's case to a court of general jurisdiction.

*Andrews*, 329 S.W.3d at 374-75. Echoing the United States Supreme Court's concern with restricting the *Apprendi* rule to decisions within the jury's historical realm, the court explained:

> The juvenile division's consideration of the statutorily defined criteria in determining whether it should retain jurisdiction over a juvenile is not the type of factual determination that was understood to be within the jury's domain by the framers of the Bill of Rights and, therefore, is not controlled by *Apprendi* and its progeny. In fact, the determination of those

criteria does not increase the statutory maximum punishment the juvenile will face; it only determines which court has final jurisdiction over the juvenile. The statutory maximum punishment is established by statutes found in the criminal code, not by a juvenile division in a certification proceeding.

*Andrews*, 329 S.W.3d at 372-73. The court concluded that the defendant's certification

did not expose him to any greater punishment than authorized by the jury's verdict as required to violate *Apprendi*. This is because the judgment that certified [the juvenile] to be tried as an adult did not impose any sentence on him whatsoever. Instead, it only determined that his case would be heard in a circuit court of general jurisdiction rather than the juvenile division of the circuit court—a decision to which other courts have determined *Apprendi* does not apply.

*Andrews*, 329 S.W.3d at 375-76 (citation omitted) (citing *Gonzales v. Tafoya*, 515 F.3d 1097, 1116 (10th Cir. 2008); *United States v. Miguel*, 338 F.3d 995, 1004 (9th Cir. 2003)).

¶17 The Indiana Court of Appeals employed similar reasoning in upholding its state's analogous juvenile waiver statute. *Villalon*, 956 N.E.2d at 702-04. The court recognized that,

[a]s a practical matter, a child who is alleged to have committed a delinquent act and is not retained in the juvenile justice system but is waived into adult court will (if found guilty) face harsher consequences for his or her conduct. Nonetheless, *Ice* makes clear that not all judicial fact-finding ultimately resulting in an increased term of incarceration invades the province of the jury. . . . Villalon provides no argument as to how our juvenile waiver statute might be understood to encroach upon the jury's traditional domain.

*Villalon*, 956 N.E.2d at 704. The court further determined that its juvenile waiver statute did not implicate *Apprendi*'s "core concerns":

[T]he waiver statute does not set forth the elements of an offense, does not provide for a determination of guilt or inno-

cence, and is not directed to consequences *after* adjudication of guilt. It does not provide a sentencing enhancement correlated with the State's proof of a particular fact. Accordingly, we conclude that the statute does not implicate the core concerns of *Apprendi.*

*Villalon,* 956 N.E.2d at 704. Thus, the court rejected the defendant's contention that he was entitled to have a jury determine the facts supporting the juvenile court's waiver of jurisdiction. *Villalon,* 956 N.E.2d at 702-04.

¶18 Given the Supreme Court's recent elucidation regarding the scope of *Apprendi*—and the persuasive reasoning of other state courts in upholding their own juvenile jurisdiction statutes—we conclude that our reasoning in prior opinions rejecting the arguments presented herein is sound. The trial court's declination decision is a jurisdictional determination, intended only to locate the appropriate forum for a defendant's trial. It does not impose upon the defendant any sentence at all, much less one greater than the prescribed statutory maximum.

¶19 Although, here, declination was necessary for Childress to be subject to the greater punishments available in adult criminal court, it was not sufficient; in order for Childress to be subject to any punishment at all, Childress first had to be convicted—by a jury based upon facts proved beyond a reasonable doubt—of the alleged offense. The trial court found by a preponderance of the evidence that "declination would be in the best interest of the juvenile or the public." RCW 13.40.110(3). No more is necessary. *H.O.,* 119 Wn. App. at 554-55. Childress's constitutional rights were not thereby violated.

¶20 The remainder of this opinion has no precedential value. It will, therefore, be filed for public record in accordance with the rules governing unpublished opinions.

GROSSE and COX., JJ., concur.

Review denied at 176 Wn.2d 1002 (2013).