The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Joshua David GESS, Defendant–Appellant.

No. 07CA1998.

Colorado Court of Appeals, Div. V.

April 29, 2010.

As Modified on Denial of Rehearing June 10, 2010.

John W. Suthers, Attorney General, Clemmie Parker Engle, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Suzan Trinh Almony, Suzan Trinh Almony, Broomfield, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Joshua David Gess appeals his conviction for a drug offense. He argues that the district court lost jurisdiction by failing to comply with section 16–14–104, C.R.S.2009, of the Uniform Mandatory Disposition of Detainers Act (UMDDA). Because we cannot determine whether the court complied with section 16–14–104, we remand for further proceedings.

## I. Introduction

We first review the pertinent provisions and relevant events.

### A. The UMDDA

The UMDDA is codified at sections 16–14–101, et seq., C.R.S.2009. Three of its provisions pertain here.

1. Section 16–14–102(1) establishes the right to request a final disposition of untried charges. It also describes the form and contents of a proper request:

Any person who is in the custody of the department of corrections … may request final disposition of any untried indictment, information, or criminal complaint pending against him in this state. The request shall be in writing addressed to the court in which the indictment, information, or criminal complaint is pending and to the prosecuting official charged with the duty of prosecuting it and shall set forth the place of confinement.

2. Section 16–14–103(1), establishes the method of delivering the prisoner's request:

Any request made pursuant to section 16–14–102 shall be delivered to the superintendent where the prisoner is confined who shall forthwith:

(a) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the earned time earned, the time of parole eligibility of the prisoner, and any decisions of the state board of parole relating to the prisoner; and

(b) Send, by registered mail, a copy of the request made by the prisoner and a copy of the information certified under paragraph (a) of this subsection (1) to both the court having jurisdiction of the untried offense and to the prosecuting official charged with the duty of prosecuting the offense.

3. Section 16–14–104 creates a 180–day deadline for the final disposition of charges. It also provides means of extending the deadline and describes the consequence for failure to comply:

(1) Within one hundred eighty days after the receipt of the request by the court and the prosecuting official, or within such additional time as the court for good cause shown in open court may grant, the prisoner or the prisoner's counsel being present, the indictment, information, or criminal complaint shall be brought to trial; but the parties may stipulate for a continuance or a continu-

ance may be granted on notice to the prisoner's attorney and opportunity to be heard. If, after such a request, the indictment, information, or criminal complaint is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information, or criminal complaint be of any further force or effect, and the court shall dismiss it with prejudice.

(2) Any prisoner who requests disposition pursuant to section 16–14–102 may waive the right to disposition within the time specified in subsection (1) of this section by express waiver on the record after full advisement by the court. If a prisoner makes said waiver, the time for trial of the indictment, information, or criminal complaint shall be extended as provided in section 18–1–405(4), C.R.S., concerning waiver of the right to speedy trial.

## B. Relevant Events

In May 2006, while confined in Denver County Jail, Gess mailed to the court a "Motion for Writ of Habeas Corpus." (Gess sent this motion pro se, even though he was represented by counsel.) On the third page of the motion, in a paragraph that tops a list of "Additional Notices and Requests," Gess requested "a speedy disposition of a detainer for case no. 06CR0000483, per the UMDDA." Gess also requested that the court clerk "forward any presentations, letters and so forth to the appropriate parties."

Seven months later, Gess appeared for trial. He asked the court to dismiss his charges for the failure to meet the 180–day deadline. The court declined to do so. It ruled that Gess was not entitled to invoke the UMDDA because that statute "relates to crimes allegedly committed before incarceration, not crimes committed after release from incarceration and while on parole."

Thereafter, Gess made decisions that delayed his trial. (For example, he obtained a new lawyer and later fired that lawyer.) However, throughout the process, Gess expressly preserved his rights under the UMDDA.

In August 2007, Gess pled guilty to possession of a controlled substance with intent to distribute. He was sentenced to twenty years in a community corrections facility.

## II. Discussion

Gess contends that the court lost jurisdiction before the charges were finally resolved. Whether he is correct depends on the answers to several subsidiary questions. We address these questions in turn and conclude that the matter cannot be resolved on the existing record.

### A. Can Gess complain now?

■ We first consider whether Gess may challenge his conviction even though he pled guilty. The answer is yes. A trial court loses jurisdiction if it fails to comply with section 16–14–104, and that defect is not waived by a subsequent guilty plea. *See People v. Fleming,* 900 P.2d 19, 24 n. 8 (Colo.1995); *People v. Mueller,* 851 P.2d 211, 214 (Colo.App.1992).

### B. Was Gess in custody?

■ The parties agree that Gess was "in the custody of the department of corrections" when he attempted to invoke his rights under the UMDDA. While Gess was jailed in Denver on unrelated charges, he was on parole for a previous offense. *See People v. Campbell,* 742 P.2d 302, 308–09 (Colo.1987) (although not in its physical custody, a parolee is "in the custody of the department of corrections" within the meaning of section 16–14–102).

### C. Was Gess otherwise disqualified?

■ The court ruled that Gess could not seek relief under the UMDDA because he had committed his offense "after release from incarceration and while on parole." The parties agree that the court's ruling was incorrect. Under section 16–14–102(1), a prisoner may request final disposition "of *any* untried indictment, information, or criminal complaint" (emphasis added). The statute does not require that the untried charges arise from offenses committed before incarceration. (The People correctly note that

Gess's situation is "materially indistinguishable" from one in which relief was held to be available. *See People v. Mascarenas,* 666 P.2d 101, 104–06 (Colo.1983).)

### D. Was the writing sufficient?

■ We now consider whether Gess's "Motion for Writ of Habeas Corpus" was sufficient to invoke his rights under the UMDDA. Although the parties agree that the motion did not fully comply with the statutory requirements, they disagree about the extent and effect of any deficiencies.

■ We conclude that the motion was deficient in three related ways:

1. It was misleadingly labeled. Although a court will address a properly filed request for disposition of charges under the UMDDA, it may ignore a pro se "Motion for Writ of Habeas Corpus" that is filed by a represented defendant. *See People v. Arguello,* 772 P.2d 87, 92 (Colo.1989) (a defendant has no right to "hybrid" or mixed representation); *Commonwealth v. Rodgers,* 448 Mass. 538, 862 N.E.2d 727, 732 (2007) ("The defendant acknowledges that, while he was still represented by counsel, the court was entitled to ignore such pro se filings."). In the absence of other information (calling the matter to the court's attention), Gess's motion was not sufficiently clear to invoke the UMDDA. *Cf. Campbell,* 742 P.2d at 310 (defendant's letter was "too indefinite" to invoke the UMDDA).

2. It was not addressed to all necessary recipients. Although Gess addressed the motion to the trial court, he failed to address it to "the prosecuting official," as required by section 16–14–102(1). Contrary to Gess's view, it is not enough that the motion contained a request to "forward any presentations, letters and so forth to the appropriate parties." The clerk was not obligated

to honor this request. *See Mascarenas,* 666 P.2d at 106–07.

3. It was delivered incorrectly. Instead of mailing the motion directly to the court, Gess should have given it to "the superintendent where the prisoner is confined." § 16–14–103(1).[1] This official would then have attached a certificate (stating the necessary information about Gess's sentence) and forwarded the materials, by registered mail, to the necessary recipients. *See* § 16–14–103(1)(a)–(b).

Despite these related deficiencies, we conclude that Gess eventually perfected his UMDDA request.

On December 15, 2006, Gess filed a written motion, seeking dismissal of his charges under the UMDDA. The record establishes that this motion was received by the court. Four days later, Gess appeared in open court and asked the court to dismiss his pending charges. The record shows that the prosecutor was present for that hearing.

Because the court and prosecution had actual knowledge of Gess's request (by December 19, 2006, if not earlier), we conclude that Gess's request was valid under the rule of substantial compliance. *See Campbell,* 742 P.2d at 310 (when prosecution received defendant's motion to dismiss under the UMDDA, prosecution had notice of defendant's request to invoke the UMDDA); *Mascarenas,* 666 P.2d at 105–06 (although the defendant's motion was addressed only to the court, it substantially complied because the court ultimately forwarded it to the prosecutor).

### E. Is Gess entitled to relief on this record?

■ Assuming that Gess perfected his UMDDA request on December 19, 2006, the parties disagree on whether he is entitled to relief. We conclude that he is not.

After December 19, Gess delayed his trial. He requested a new lawyer, acknowledging

---

1. Because Gess's motion was mailed directly to the court, we need not decide whether the appropriate "superintendent" would have been the Denver County Sheriff or an official in the Colorado Department of Corrections. *See People v.*

*Trancoso,* 776 P.2d 374, 380 n. 8 (Colo.1989) (although the defendant was held in the county jail, it was uncontested that the proper supervisor was an official in the department of corrections).

that the appointment would necessitate a continuance. That request was granted. Later, Gess fired this lawyer and requested a continuance so that he could prepare to represent himself. That request was granted as well.

We conclude that Gess's actions tolled the UMDDA deadline. *See* § 16–14–104(1) (charges shall be brought to trial with 180 days, "but the parties may stipulate for a continuance or a continuance may be granted on notice to the prisoner's attorney and opportunity to be heard"); *Fleming,* 900 P.2d at 23 (if a continuance is granted for good cause, the period is tolled for the length of the continuance); *People v. Anderson,* 649 P.2d 720, 723 (Colo.App.1982) ("[A]n attorney may stipulate to or request a continuance without obtaining his client's personal approval."). Thus, if Gess first perfected his UMDDA request in December 2006, his subsequent conduct extended the deadline beyond the date on which he pled guilty.

Relying on *People v. Carr,* 205 P.3d 471 (Colo.App.2008), Gess argues that a UMDDA deadline can be extended only by a formal waiver. We conclude that his reliance is misplaced.

In *Carr,* a division of this court addressed the "implied waiver" rule, a UMDDA doctrine that had been created by analogy to the speedy trial statute. *See, e.g., Mascarenas,* 666 P.2d at 106–07; *People v. Velarde,* 790 P.2d 903, 905 (Colo.App.1989). The division concluded that the rule was no longer valid. Relying on the amended version of section 16–14–104(2), the division held that a waiver of UMDDA rights is effective only if it is "(1) express; (2) on the record; and (3) preceded by a full advisement by the court." *Carr,* 205 P.3d at 473.

*Carr* does not control here because it did not address the tolling provision set forth in section 16–14–104(1) and because there is no reason to think that this tolling provision was nullified by the amendment to section 16–14–104(2). *See Welby Gardens v. Adams County Board of Equalization,* 71 P.3d 992, 995 (Colo.2003) ("In construing a statute, interpretations that render statutory provisions superfluous should be avoided."). Gess's case is plainly controlled by the tolling provision.

**F. Is Gess entitled to relief on remand?**

In February 2007, Gess's lawyer filed a motion to dismiss this case under the UMDDA. In that motion, counsel alleged that Gess had perfected his UMDDA request through documents and court appearances other than the ones discussed here. The trial court never resolved this allegation, apparently because it thought that Gess was not entitled to invoke the UMDDA. Because the court's view eliminated the need for further factual inquiry, and because we have concluded that the court's view was incorrect, we now remand so that the court may resolve Gess's allegation on the merits. *See Pullman–Standard v. Swint,* 456 U.S. 273, 291, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings . . . .").

On remand, the court shall hear evidence and determine whether Gess properly invoked his UMDDA rights before December 19, 2006. If the court determines that Gess did so, it shall determine whether the charges were resolved within the statutory period (considering any delay attributable to Gess, as discussed in part II. E). The court's ruling is subject to appellate review.

### III. Conclusion

The case is remanded for further proceedings consistent with this decision.

Judge GRAHAM and Judge STERNBERG  concur.