2013 COA 50

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Howell Franklin ROBERTS, III, Defendant–Appellant.**

**Court of Appeals No. 07CA1878**

Colorado Court of Appeals, Div. III.

Announced April 11, 2013

not misconduct").

City and County of Denver District Court No. 05CR2931, Honorable Robert L. McGahey, Jr., Judge.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Alison Ruttenberg, Boulder, Colorado, for Defendant–Appellant.

Opinion by JUDGE DAILEY

¶ 1 Defendant, Howell Franklin Roberts, III, appeals the judgments of conviction entered upon jury verdicts finding him guilty of violating the Colorado Organized Crime Control Act (COCCA), §§ 18–17–101 to –109, C.R.S.2012, conspiracy to commit computer crime (two counts), conspiracy to commit theft, conspiracy to commit forgery, computer crime (two counts), theft (four counts), forgery (17 counts), and possession of a forged instrument (2 counts). Because we reject his contentions, including that he was tried in violation of the speedy trial provisions of the applicable version of the Uniform Mandatory Disposition of Detainers Act (UMDDA), §§ 16–14–101 to –108, C.R.S. 2012, we affirm.

## I. Background

¶ 2 Defendant ran an operation to pass counterfeit payroll checks. He would obtain legitimate payroll checks from a variety of sources, copy them, scan them into his computer, and give the copies to his associates to cash at various grocery stores. In a search of his hotel room, police found hundreds of pieces of paper, check stubs, and payroll checks, along with computer equipment and software designed to make checks, check making supplies, drug paraphernalia, and handwritten lists identifying his accomplices.

¶ 3 Defendant was on parole when he was arrested in this case. On July 1, 2005, a grand jury returned an indictment accusing him of having committed sixty-one crimes, and his parole was revoked. On July 14, 2005, counsel was appointed to represent him.

¶ 4 On August 29, 2005, defendant filed pro se a document which contained, among other things, a reference to an earlier written request that he be tried within the 180–day period prescribed by the then applicable version of the UMDDA. Ch. 340, sec. 1, § 16–14–104(1), 2004 Colo. Sess. Laws 1377; cf. § 16–14–401(1), C.R.S.2012 (182 days, effective July 1, 2012).

¶ 5 On November 10, 2005, defendant entered a not guilty plea, and trial was set for April 3, 2006. When defendant noted that the trial date was beyond his calculated UMDDA period, both the court and the prosecutor responded that they had not received a UMDDA request. (They apparently had received defendant's August 29, 2005 document, but were either unaware of it, or of the UMDDA reference in it.) The court further noted that (1) it would not, in any event, consider defendant's pro se request because, at the time it was filed, he was represented by counsel; and (2) "[e]ven assuming [defendant's] oral assertion ... [at the November 10 hearing met] the requirement of the [UMDDA]," the April 3 trial date fell within the required UMDDA period.

¶ 6 The April 3, 2006, trial date was continued twice, until, ultimately, November 27, 2006. Each continuance was granted over

defendant's objection but at the request of his counsel, as follows.

¶ 7 On March 17, 2006, counsel moved to continue the April 3, 2006, trial date because he "would not be prepared and able to be effective in [his] representation" due to "the complex nature of plea bargains and the huge number of witnesses." Although objecting to the continuance, defendant stated that he "absolutely" did not want to represent himself at trial. The court continued the trial until July 31, 2006, reasoning:

> [T]here's no question the number of counts involved in this case, the number of witnesses, that this is a very serious and significant case. It is one which will require considerable preparation. If the Court were to deny the request for the continuance, I believe we would be setting up the record for an automatic appeal and a waste of time doing the trial in any event.

¶ 8 In May and early June 2006, defendant filed three pro se motions in which he alleged that the court had "violated [his] [UMDDA] rights and permanently lost jurisdiction of [the case] as of February ... 2006." At a June 9, 2006, hearing, defense counsel moved for another continuance of the motions hearing and trial because, he said, he needed to withdraw from the case. In support of this assertion, he stated:

> [A]s the court is aware and [the prosecutor] is aware and [defendant] is aware, [I have] had to reduce my caseload through A[lternative] D[efense] C[ounsel] and I'm going to have to get off this case. They're going to be attempting to find a new attorney ... to represent [defendant]. And I think it would be prudent to not proceed to motions if new counsel is going to be on the case.

¶ 9 When the court wondered aloud what to do about the July 31 trial date if new counsel were to enter the case, defense counsel responded:

> I have to also say, [the prosecutor] has recently ... tendered new witnesses.... I don't have official written information on some of them, but in any event, there are a number of new witnesses that have, well, accepted plea deals, and I believe agreed to testify which is my long way of getting around I don't believe that had I been on this case I would have been able to proceed on July 31st anyway.

¶ 10 Although defendant did not express an objection to counsel's request to withdraw, he said that he was not "waiving [his] speedy trial" and that he did not want to represent himself. At that point, the court informed defendant that if he wanted an attorney to represent him,

- "there's no way [a July 31 trial] can happen if [defense counsel] is getting off the case," given "the complicated nature of [the charges] and the volume of discovery" with which new counsel would be confronted; and

- even if current defense counsel's "feet [were held] to the fire" and he was made to "stay on this case," by his own account, he could not "get prepared" by, and would be "ineffective" if forced to go to trial on, July 31.

¶ 11 Unwilling to create a situation where counsel would, in any event, provide ineffective assistance, the court continued the July 31 trial date; granted defense counsel's request to withdraw; and set June 30, 2006 for a status conference and entry of new counsel.[1] On June 30, new counsel appeared on defendant's behalf, and the court set the trial for November 27, 2006, with the seeming agreement of new counsel,[2] but, again, over defendant's objection.

¶ 12 Defendant, and, ultimately, new defense counsel filed motions to dismiss the case on, among other things, UMDDA

---

1. The court indicated that, given the nature of the case, "whoever is assigned to [defendant's] case [should be] someone with experience, a trial lawyer with this kind of experience in this kind of case rather than plucking someone new and untested off the [ADC] list," which was "the advantage of having someone with [defense counsel's] level of experience."

2. Although he agreed to the trial date, new counsel noted, "Defendant has not agreed and we are preserving his rights under the [UMDDA] and [the] speedy trial [statute]."

grounds. On November 16, 2006, the court ruled that there had been "no violation of the UMDDA":

> [T]he trial ... is set for when it is ... because of issues involving retention of counsel and issue[s] raised by the lawyers representing [defendant].... The actions ... of ... counsel ... acting on [defendant's] behalf ... constitute a waiver of ... [his] UMDDA [rights].

¶ 13 At trial, defendant argued that the witnesses who testified against him, many of whom had admitted to their own criminal activities, were not credible. In addition, he argued that his operation, which he generally categorized as a loose association of petty criminals, would not qualify as an "enterprise" under COCCA. The jury convicted him, as noted above, and upon his adjudication as an habitual criminal, the court sentenced him to an aggregate term of 306 years imprisonment.

## II. UMDDA

¶ 14 Defendant contends that his convictions must be vacated because he was not brought to trial within the period allowed by the applicable version of the UMDDA. We disagree.

In *People v. Glasser*, 293 P.3d 68 (Colo. App.2011), a division of this court noted:

> The primary purpose of the UMDDA is to "provide a mechanism for prisoners to insist upon speedy and final disposition of untried charges that are the subjects of detainers so that prison rehabilitation programs initiated for the prisoners' benefit will not be disrupted or precluded by the existence of these untried charges."

*Id.* at 76 (quoting *People v. Higinbotham*, 712 P.2d 993, 997 (Colo.1986)).

¶ 15 Under the applicable version of section 16–14–104(1), a defendant had to be brought to trial within 180 days after the court and the prosecuting official received his or her written request for final disposition of charges, unless that period was waived or extended for good cause or by stipulation.[3] The failure to try the defendant within the time allowed under the UMDDA requires dismissal of the charges with prejudice. *Id.*

¶ 16 The burden of compliance with the statutory speedy disposition provisions of the UMDDA is on the prosecution and the trial court. *People v. Mueller*, 851 P.2d 211, 213 (Colo.App.1992).

¶ 17 To determine whether the trial court correctly rejected defendant's motions to dismiss for failure to comply with the UMDDA, we must inquire

- Whether defendant invoked the protections of the UMDDA;
- If defendant invoked the protections of the UMDDA, whether he was brought to trial within the prescribed 180–day period; and
- If he was not brought to trial within the 180–day period, whether that period was properly waived or extended until the November 27, 2006 trial.

### A. Whether Defendant Invoked the Protections of the UMDDA

¶ 18 Defendant contends that he invoked the UMDDA by filing on August 29, 2005, a written request to be tried within the time specified in UMDDA.[4] We agree that, ultimately, this document served to invoke UMDDA rights, but not, as he contends, on August 29, 2005.

¶ 19 The UMDDA sets forth the procedure for invoking its protections. It requires, in the first instance, a written request for speedy disposition, "addressed to the court

---

3. In 2012, the General Assembly amended section 16–14–104(1) to increase the period prescribed for bringing an individual to trial to 182 days. Ch. 208, sec. 94, 2012 Colo. Sess. Laws 859.

4. Defendant also mentions in his opening brief the document he had earlier filed in county court referencing the UMDDA. Because, however, he did not attempt to develop any argument to that

effect on appeal, we decline to address it further. *See People v. Wallin*, 167 P.3d 183, 187 (Colo. App.2007) (declining to address arguments presented in a perfunctory or conclusory manner); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

... and to the prosecuting official charged with the duty of prosecuting" the new case, § 16–14–102(1), C.R.S.2012; and, in the second instance, delivery of the written request to the superintendent of the facility in which the prisoner is detained (the superintendent is, in turn, obligated to certify and forward certain information, together with a copy of the request for speedy disposition, to the court and prosecuting attorney), § 16–14–103(1), C.R.S.2012.

¶ 20 Defendant asserts that, although he may not have strictly followed these procedures, he sufficiently complied with them to invoke the protections of the UMDDA.

¶ 21 In *People v. Gess,* 250 P.3d 734 (Colo. App.2010), a division of this court considered whether a defendant's pro se motion, filed, as here, with the court while represented by counsel, was sufficient to invoke UMDDA rights. The division concluded that the defendant's motion was insufficient to invoke his UMDDA rights because a court "may ignore a pro se [motion] that is filed by a represented defendant," the motion "was misleadingly labeled," "[i]t was not addressed to all necessary recipients," and "[i]t was delivered incorrectly." *Id.* at 737.

¶ 22 Similarly here, defendant's "request"—which he made in one sentence in a four-page document labeled "Notice to Court of Assertion of Rights and Criminal Procedures"—was not, in our view, of a nature that would have readily alerted the court or the prosecution to his invocation of UMDDA rights. *See id.* ("In the absence of other information (calling the matter to the court's attention), [defendant's pro se] motion [labeled 'Motion for Writ of Habeas Corpus'] was not sufficiently clear to invoke the UMDDA."). Defendant's request was also improperly mailed directly to the court instead of given to the "superintendent where the prisoner is confined," for delivery to the court. § 16–14–103(1).

¶ 23 Both the court and the prosecutor denied that they were aware or had notice of defendant's UMDDA request until November 10, 2005. In light of the deficiencies in defendant's request, we conclude, like the division in *Gess,* that his UMDDA rights were not "perfected" until November 10, 2005, when "the court and prosecution [obtained] actual knowledge of [his] request." 250 P.3d at 737. Consequently, defendant's 180–day UMDDA period commenced that day. *See People v. Adolf,* 2012 COA 60, ¶ 14, 296 P.3d 251 ("[T]here is no evidence in this record that the prosecution received actual notice prior to July 13, 2009, when defense counsel notified the court, and the 180–day period began to run on that day."); *see also People v. Campbell,* 742 P.2d 302, 310 (Colo. 1987) (there was substantial compliance with the UMDDA when the court provided the prosecutor with actual notice of defendant's request under the UMDDA mailed directly to the court); *People v. Mascarenas,* 666 P.2d 101, 106 (Colo.1983) ("Where a prisoner has substantially complied with the provisions of the Act *and* the prosecution has actual notice of the prisoner's request, it is not an abuse of discretion for the trial court to dismiss pending charges under the Act.") (emphasis in original).

### B. Whether Defendant Was Brought to Trial Within 180 Days

¶ 24 Defendant was not brought to trial within 180 days of November 10, 2005, that is, on or before May 9, 2006.

### C. Whether the Time for Bringing Defendant to Trial Was Waived or Extended

#### 1. Waiver

¶ 25 Under the UMDDA, a defendant waives the right to be tried within the applicable period "by express waiver on the record after full advisement by the court." § 16–14–104(2), C.R.S.2012.

¶ 26 Here, defendant never expressly waived on the record his right to a speedy disposition under the UMDDA. He was, at all times, adamant about being tried within the 180–day period prescribed by the UMDDA. Consequently, the trial court erred in determining that he had waived any UMDDA rights. *See People v. Carr,* 205 P.3d 471, 473 (Colo.App.2008).

## 2. Extensions

¶ 27 Here, the time for bringing defendant to trial was extended beyond the May 9, 2006 date as a result of two continuances requested by his attorneys.

 ¶ 28 In *People v. Fleming,* 900 P.2d 19 (Colo.1995), the Colorado supreme court recognized that "[e]xtension of the [period prescribed by the UMDDA] does not require the personal consent of the defendant." *Id.* at 23; *see also People v. Anderson,* 649 P.2d 720, 724 (Colo.App.1982). "Thus, despite a defendant's lack of consent, if the continuance w[as] granted for good cause, it will still serve to toll the [UMDDA] period." *Fleming,* 900 P.2d at 23.

¶ 29 The phrase "good cause" is not defined in the UMDDA. It is an amorphous term, difficult of precise delineation. *E.g., Del. Valley Wholesale Florist, Inc. v. Addalia,* 349 N.J.Super. 228, 793 A.2d 139, 141–42 (2002). Indeed, other courts, considering the phrase in the UMDDA or speedy trial context, have held only that it means "a substantial reason ... that rises to the level of a legal excuse." *State v. Livas,* 147 Idaho 547, 211 P.3d 792, 794 (App.2009); *see also State v. Rouse,* 13 Neb.App. 90, 688 N.W.2d 889, 890 (2004) ("Good cause means a substantial reason; one that affords a legal excuse.").

¶ 30 Because it is amorphous, "[w]hether or not [the good cause standard] has been satisfied is largely dependent upon the facts of each individual case" and its "determination is entrusted to the sound and considerable discretion of the district court in the first instance." *Colasante v. Wells Fargo Corp.,* 81 Fed.Appx. 611, 613 (8th Cir.2003) (unpublished opinion); *see also People v. Grant,* 174 P.3d 798, 803 (Colo.App.2007) ("[W]hether good cause has been shown is a matter committed to the discretion of the trial court.").

¶ 31 A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Williams,* 2012 COA 165, ¶ 13, 297 P.3d 1011.

¶ 32 In reviewing the good cause issue, we can apply principles derived from statutory speedy trial cases, unless the statutory speedy trial provisions of section 18–1–405, C.R.S.2012 conflict with those in the UMD-DA. *See People v. Swazo,* 199 Colo. 486, 489, 610 P.2d 1072, 1074 (1980) (although Colorado's speedy trial statute and the UMDDA apply to different situations, they nonetheless "reflect the same policy of assuring speedy trials" and, therefore, "the enunciated principles for one can be applied to the others unless the provisions conflict").

¶ 33 Our courts have recognized that the statutory six-month speedy trial period of section 18–1–405 can be extended where a reasonable delay is necessary to protect a defendant's right to counsel:

> Because sufficient time for trial preparation is necessary to ensure that the defendant receives effective assistance of counsel, under some circumstances it may be necessary for the trial court to continue the trial date beyond the statutory speedy trial period.
>
> Under such circumstances, the trial court's decision to continue the trial date beyond the speedy trial deadline will be upheld if the record supports the trial court's conclusion that the delay was necessary to protect the defendant's constitutional right to effective assistance of counsel.

*People v. Jefferson,* 981 P.2d 613, 615 (Colo. App.1998) (citation omitted).

¶ 34 In a similar vein, the supreme court has recognized:

> When a trial court is required to substitute defense counsel, the defendant's right to effective assistance of counsel may be jeopardized by the strict adherence to the statutory speedy trial right because the substitute counsel has inadequate time to prepare. Under such circumstances, we have held that charging a continuance of the trial date to the defendant is appropriate if continuing the trial date is necessary to allow new counsel to prepare for trial. In order to reach such a conclusion, however, the record must support the trial court's conclusion that the delay in derogation of the defendant's statutory right to a speedy trial was *necessary* to protect his constitutional right to effective assistance of counsel.

*People ex rel. Gallagher v. Dist. Court,* 933 P.2d 583, 588–89 (Colo.1997) (emphasis in

original) (citations omitted); *see also People v. Scales*, 763 P.2d 1045, 1048 (Colo.1988) ("Continuances made necessary because of the substitution of counsel may, depending upon the particular circumstances of the case, be chargeable to the defendant.").

¶ 35 In our view, *Jefferson* controls our assessment of the first continuance, while *Gallagher* guides our assessment of the second.

■ ¶ 36 The trial court granted the first continuance upon defense counsel's assertion that he would be unable to provide defendant with effective assistance if required to go to trial on the scheduled April 3, 2006 date. Counsel gave, as his reasons, the complexity of the plea bargaining process, as well as the "huge number of witnesses" in the case. Because, by that point, the case involved sixty-one charges, forty-four witnesses had been listed on the grand jury indictment alone, and counsel had been assigned to the case for only eight months, we perceive no abuse of the court's discretion in determining that good cause existed for granting the initial continuance to July 31, 2006.[5]

■ ¶ 37 We reach a similar conclusion with respect to the second continuance. The question is whether the record supports the conclusion that the continuance "in derogation of ... defendant's [UMDDA] right to a speedy trial was *necessary* to protect his constitutional right to effective assistance of counsel." *Gallagher*, 933 P.2d at 588–89 (emphasis in original). We conclude not only that a continuance was necessary to protect defendant's constitutional right to effective assistance of counsel, but also that the length of the continuance was proper as well.

¶ 38 Defense counsel stated that he could not be ready even by July 31 to try the case himself because of the prosecution's recent disclosure of a number of new witnesses in the case.[6] In light of this circumstance and defense counsel's opinion that, if forced to go to trial on July 31, he would render ineffec-

tive assistance to defendant, we discern no error in the exercise of the court's discretion in continuing the trial beyond that date.

¶ 39 The issue, then, becomes whether the court abused its discretion in continuing the trial for as long as it did, that is, nearly four months. The resolution of that issue depends, in turn, on whether the court should have allowed defense counsel to withdraw from the case. If defense counsel was properly permitted to withdraw, a four-month continuance to allow new counsel time to prepare would have been reasonable, given the nature and number of charges and the number of witnesses in the case. If, however, the court erred in allowing defense counsel to withdraw, then it would have been highly questionable whether a four-month continuance was necessary: having been on the case for nearly a year at that point, defense counsel presumably would not have needed as much additional time to prepare as would new counsel, wholly unfamiliar with the case.

¶ 40 In an analogous area of the law, we have recognized that when a defendant establishes good cause for the removal of court-appointed counsel—such as a conflict of interest—a court *must* appoint substitute counsel. *See People v. Kelling*, 151 P.3d 650, 653 (Colo.App.2006) (recognizing that, before substitute counsel is warranted, the court must verify the existence of "some well founded reason for believing that the appointed attorney cannot or will not competently represent him") (quoting 3 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 11.4(b), at 555 (2d ed. 1999)).

¶ 41 Here, defendant had not requested the removal of defense counsel, but he had expressed, on at least two occasions, dissatisfaction with defense counsel's representation of him. And defense counsel himself identified circumstances that supported a finding

---

5. We have found nothing in the record that would support defendant's assertion that counsel's inability to effectively represent him at the scheduled April 3, 2006 trial was attributable to counsel's own neglect, inadvertence, or lack of preparation.

6. The prosecution had, on May 26, 2006, submitted a list of an additional eighty-one witnesses to testify in the case.

of a potentially disqualifying conflict of interest.

¶ 42 Defense counsel stated that he needed to reduce his caseload and "get off" this case. Although not elaborately articulated, the gist of counsel's position appears to have been that he had an excessive caseload that was interfering with his ability to provide competent representation to his clients. "[A] conflict of interest is inevitably created when [an appointed counsel] is compelled by his or her excessive caseload to choose between the rights of the various indigent defendants he or she is representing." *In re Edward S.*, 173 Cal.App.4th 387, 92 Cal. Rptr.3d 725, 746–47 (2009); *see In re Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender*, 561 So.2d 1130, 1135 (Fla.1990) ("[w]hen excessive caseload forces the public defender to choose between the rights of the various indigent criminal defendants he represents, a conflict of interest is inevitably created"); *State ex rel. Missouri Public Defender Comm'n v. Waters*, 370 S.W.3d 592, 608 (Mo. 2012) (quoting *In re Edward S.* with approval). In such a situation, the lawyer should move to withdraw so that the court can appoint substitute counsel. *See In re Edward S.*, 92 Cal.Rptr.3d at 746; *see also* ABA Comm. on Ethics & Prof'l Responsibility, *Ethical Obligations of Lawyers Who Represent Indigent Criminal Defendants When Excessive Caseloads Interfere with Competent and Diligent Representation*, Formal Op. No. 06–441 (2006) (ABA Opinion).

¶ 43 Ordinarily, the appointed attorney filing the motion to withdraw "should provide the court with information necessary to justify the withdrawal." ABA Opinion n. 23; *see In re Edward S.*, 92 Cal.Rptr.3d at 746. Whether a workload is excessive "depends not only on the number of cases, but also on such factors as case complexity, the availability of support services, the lawyer's experience and ability, and the lawyer's nonrepresentational duties." ABA Opinion; *see In re Edward S.*, 92 Cal.Rptr.3d at 747 n. 10.

¶ 44 In this case, defense counsel did not place such information on the record. However, it is apparent, from what defense counsel said on the record, that the prosecution, the court, and defendant himself were aware of the facts which made it necessary for him to reduce his caseload. Defendant did not take issue with defense counsel's withdrawal from the case or the reasons for it.

¶ 45 Under the circumstances, we conclude that the representations made by defense counsel were sufficient to allow the trial court to determine that a potential conflict of interest existed. While they "may not have been such as to require the court to authorize [counsel's] withdrawal," they provided a "proper basis upon which the court [could] authorize such withdrawal." *People v. Monroe*, 907 P.2d 690, 694 (Colo.App.1995), *disapproved of on other grounds*, 925 P.2d 767 (Colo.1996).

¶ 46 Because good cause existed for substitution of counsel, good cause (i.e., allowing adequate time for new counsel to prepare for trial) necessarily existed to continue defendant's trial to November 27, 2006. *See Monroe*, 907 P.2d at 694 (analyzing analogous speedy trial issue involving delay occasioned by the necessity to replace a counsel operating under a conflict of interest).

¶ 47 Thus, albeit on somewhat different grounds, we affirm the trial court's ruling that there was no violation of defendant's UMDDA rights. *See People v. Holmes*, 959 P.2d 406, 409 (Colo.1998) (a correct judgment may be upheld on any ground supported by the record).

### III. Other Issues

¶ 48 For the following reasons, we also reject the other contentions defendant raises on appeal:

- Defendant was tried within the time allowed by Colorado's speedy trial statute, section 18–1–405, because (1) defendant entered his plea of not guilty on November 10, 2005; (2) trial was delayed beyond six months from that date only as a result of two continuances granted to allow defense counsel or new counsel adequate time to prepare for trial; and (3) under section 18–1–405(6), scheduling delays to accommodate defense counsel are attributable to defendant. *See People v. Marez*, 916 P.2d 543, 548 (Colo.App.

1995); *People v. Hamer*, 689 P.2d 1147, 1150 (Colo.App.1984).

- Defendant did not properly preserve his constitutional speedy trial argument for review: although he referenced it in his written motions, he provided no analysis of the constitutional issues and never sought a ruling from the trial court. *See People v. McMurtry*, 122 P.3d 237, 245 (Colo.2005) (declining to consider constitutional speedy trial claim because, although the defendant "referred [in the trial court] to his constitutional right in the caption of his motion ..., he did not argue any of the elements of this constitutional right in either his motion or at the hearing on the motion").

- Defendant was not denied his Sixth Amendment right to counsel because he lacked the assistance of counsel at his Crim. P. 5 advisement hearing. Although he is correct that the hearing triggered his right to counsel, *Rothgery v. Gillespie County*, 554 U.S. 191, 194, 128 S.Ct. 2578, 2581, 171 L.Ed.2d 366 (2008), he is incorrect in asserting that he was entitled to the assistance of counsel at the hearing itself. *See id.* at 212, 128 S.Ct. at 2591 ("counsel must be appointed within a reasonable time after attachment [of the right to counsel] to allow for adequate representation at any critical stage before trial, as well as at trial itself"); *see also Ex Parte Cooper*, 43 So.3d 547, 550 (Ala.2009) (prior holdings "that a defendant's initial appearance ... is not a critical stage in the proceedings against the defendant and that a defendant is not entitled to the assistance of counsel at the initial appearance do not conflict with *Rothgery* and remain the law in [Alabama]"); *Ex parte Mortland*, 2011 WL 3518165, *1 (Tex.App.2011) (unpublished memorandum opinion) ("*Rothgery* did not hold that a defendant has a right to counsel at his initial appearance before a judicial officer; that is, it did not hold that this appearance is a critical stage of a criminal proceeding. It held only that the Sixth Amendment right to counsel attaches at such an appearance and that counsel must be appointed (or the defen-

dant must be given the opportunity to retain counsel) within a reasonable time thereafter.") (citation omitted).

¶ 49 Further, even if defendant was entitled to the assistance of counsel at that hearing, any error in not providing counsel was harmless, as nothing of any significance to the determination of defendant's guilt or innocence occurred at this hearing. *See Hurrell–Harring v. State*, 15 N.Y.3d 8, 904 N.Y.S.2d 296, 930 N.E.2d 217, 224 (2010) ("where ... what occurs at arraignment does not affect a defendant's ultimate adjudication, a defendant is not on the ground of nonrepresentation entitled to a reversal of his or her conviction").

¶ 50 The judgments of conviction are affirmed.

JUDGE FURMAN and JUDGE BOORAS concur.