Opinion by JUDGE TAUBMAN
¶ 1 Defendant, Alberto Valles, appeals the trial court's judgment of conviction entered upon jury verdicts finding him guilty of one count first degree extreme indifference murder and four counts of attempted extreme indifference murder. He also appeals the sentence imposed.
¶ 2 This case presents an issue of first impression regarding whether a previous version of Colorado's direct file statute, which allows prosecutors to directly file criminal charges against certain juveniles in district court, is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We conclude that Apprendi and Blakely are not controlling on the issue, and therefore do not render the statute unconstitutional. Addressing the remainder of Valles's claims, we affirm his conviction, vacate his sentence, and remand to the trial court for resentencing.
I. Background
¶ 3 Valles was a member of a gang that was feuding with another gang. On November 30, 2005, Valles (then seventeen years old) and fellow gang members, including Hector Castillo Jr. and Lucas Cummings, were driving in a car owned by Castillo Jr.'s father. The three men came across another car driven by J.M., the leader of their rival gang. The second car contained numerous passengers, including R.S. A chase ensued, during which Valles fired multiple rifle shots at the rival car. One of the shots hit R.S., fatally wounding him.
¶ 4 Police subsequently apprehended Valles, and he was charged with one count first degree extreme indifference murder and four counts of attempted extreme indifference murder. Valles's first jury trial resulted in a hung jury. Following a second jury trial, he was convicted as charged and sentenced to life without the possibility of parole.
¶ 5 This appeal followed.
II. Direct File Statute
¶ 6 Valles asserts that Ch. 283, sec. 1, § 19-2-517, 1996 Colo. Sess. Laws 1639 (the direct file statute), which authorized the prosecution to charge him as an adult in the district court, is unconstitutional on its face under Apprendi and Blakely . We disagree.
*542 A. Standard of Review
¶ 7 We review the constitutionality of a statute de novo. Hinojos-Mendoza v. People , 169 P.3d 662, 668 (Colo.2007). Because statutes are presumed constitutional, the challenging party must prove unconstitutionality beyond a reasonable doubt. Id.
B. Preservation
¶ 8 At oral argument, the People asserted that Valles did not preserve this issue. Specifically, they argued that, although Valles challenged the constitutionality of the direct file statute in the trial court, the trial court never ruled on the objection, and thus, the issue was not properly preserved. See generally First Interstate Bank v. Cent. Bank & Trust Co., 937 P.2d 855, 858 (Colo.App.1996) (arguments not ruled upon by a trial court may not be raised for the first time on appeal).
¶ 9 However, we decline to consider the prosecution's assertion because it was raised for the first time during oral argument. See People v. Rainer, 2013 COA 51, ¶ 80, 412 P.3d 520, 2013 WL 1490107 ("We decline to consider new arguments made by the People during oral argument that were not made either in the trial court or in the People's answer brief on appeal.").[1]
C. Discussion
¶ 10 When Valles was charged, the relevant version of section 19-2-517 authorized a prosecutor to charge a juvenile fourteen years of age or older who was alleged to have committed a class 1 or class 2 felony by direct filing an information in the district court. Ch. 283, sec. 1, § 19-2-517(1)(a), 1996 Colo. Sess. Laws 1639.[2] The statute also required the district court to sentence as an adult any juvenile charged under section 19-2-517(1) and convicted of a class 1 felony. Ch. 283, sec. 1, § 19-2-517(3)(a), 1996 Colo. Sess. Laws 1640. Accordingly, here, the prosecution elected to file charges against Valles in the district court; and, as a result of his conviction for a class 1 felony, the district court sentenced him as an adult.
¶ 11 In Apprendi, and subsequently in Blakely, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Blakely, 542 U.S. at 301, 124 S.Ct. 2531 (quoting Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 ). Thus, Valles asserts that because the decision to file his charges in the district court resulted in a higher sentence than he would have received if he were charged as a juvenile offender, a jury was required to make the factual findings required by the direct file statute-that he was a juvenile, and that he was alleged to have committed, and was convicted of, a class 1 felony-prior to the prosecution being allowed to file charges in the district court.
¶ 12 However, Valles cites no Colorado authority to support his assertion that Apprendi and Blakely apply to the direct file statute, nor are we aware of any. Rather, we conclude that Apprendi and Blakely are inapposite.
¶ 13 Both Apprendi and Blakely involved statutory schemes that allowed a trial court to increase a defendant's sentence based on facts determined by the trial court subsequent to the defendant's conviction. Blakely, 542 U.S. at 299, 124 S.Ct. 2531 ; Apprendi, 530 U.S. at 468-69, 120 S.Ct. 2348. The direct file statute, however, involves a prosecutor's pretrial exercise of discretion, not a posttrial finding of fact. See generally People v. Thorpe, 641 P.2d 935, 939-40 (Colo.1982) ("The statutory scheme prescribed by *543 the legislature is clear and vests [the] determination [whether to direct file] solely in the discretion of the district attorney."); Myers v. Dist. Court, 184 Colo. 81, 85, 518 P.2d 836, 838 (1974) ("[i]t is well settled that a prosecutor has constitutional power to exercise his discretion in deciding which of several possible charges to press in a prosecution" and "may properly invoke the concurrent jurisdiction of the district court" in charging a juvenile); People v. Hughes, 946 P.2d 509, 516 (Colo.App.1997) ("[I]t is a valid exercise of prosecutorial discretion for prosecutors to select which of the juveniles who meet the statutory requirement for direct filing will be filed upon in district court."), overruled in part by Valdez v. People 966 P.2d 587, 591 (Colo.1998).
¶ 14 In addition, under the Colorado Constitution's separation of powers principle, a prosecutor, as an executive branch official, may not be limited in the exercise of his or her discretion by judicial intervention. People v. Dist. Ct., 632 P.2d 1022, 1023-24 (Colo.1981). Such discretion is protected even when it results in the possibility of a longer sentence. See People v. Wellington, 633 P.2d 1390, 1391 (Colo.1981).
¶ 15 Further, the United State Supreme Court limited the scope of Apprendi and Blakely in Oregon v. Ice, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). There, the Supreme Court held that Apprendi and Blakely are limited in application to the "historic role[s]" of a jury. Id . at 168, 129 S.Ct. 711. Thus, the Court held that trial court judges could make the factual findings required under Oregon law necessary for imposing consecutive, rather than concurrent, sentences - despite the potential of a significantly longer overall sentence. Id . at 164, 129 S.Ct. 711. Here, the direct file statute involves deciding where a case should be filed. Although the statute can result in a defendant being sentenced to a significantly longer period of incarceration, the decision regarding the forum in which a case is filed has never been part of the historical role of a jury. Significantly, following Ice, the Washington Court of Appeals held that Apprendi does not require a jury to determine the predicate facts for a juvenile court to decline jurisdiction and transfer a case for adult criminal prosecution. State v. Childress, 169 Wash.App. 523, 280 P.3d 1144, 1147-48 (2012) (collecting cases).
¶ 16 Finally, the direct file statute does not affect the determination of a defendant's guilt or innocence. Nor does it implicate the procedural fairness of the resulting trial. See United States v. Dillard, 490 Fed.Appx. 869, 870 (9th Cir.2012) (Apprendi does not apply to transfers between juvenile and adult courts because such transfers do not relate to guilt or innocence and do not deny a defendant "crucial procedural protections.") Accordingly, we conclude that Apprendi and Blakely are inapposite and do not apply.
¶ 17 Other jurisdictions have similarly held that the holdings in Apprendi and Blakely do not apply to their direct file statutes. See Id .; Gonzales v. Tafoya, 515 F.3d 1097, 1117 (10th Cir.2008) (Apprendi does not apply to a judge's decision whether to sentence a juvenile under the adult sentencing scheme, even though the decision may result in a significantly longer sentence); United States v. Miguel, 338 F.3d 995 (9th Cir.2003) ( Apprendi is inapplicable to an analysis of relevant direct file statute, because the statute does not create a per se increase of a defendant's punishment; rather, it establishes district court jurisdiction); Kirkland v. State, 67 So.3d 1147, 1149 (Fl.Dist.Ct.App.2011) (Apprendi does not govern Florida's direct file statute because the statute relates to prosecutorial discretion, not sentence enhancement); State v. Jones, 273 Kan. 756, 47 P.3d 783, 798 (2002) (Apprendi does not apply to Kansas's direct file statute because the statute "does not involve guilt or innocence, but involves the determination of which system will be appropriate for a juvenile offender"); Caldwell v. Commonwealth, 133 S.W.3d 445, 453 (Ky.2004) (same); see also State v. Andrews, 329 S.W.3d 369, 372-73, 375 (Mo.2010) (collecting cases, and holding that a statute that allows juvenile courts to transfer certain juvenile cases to the district court is not controlled by Apprendi and Blakely, because the decision affects only the jurisdiction of the court, not the defendant's sentence). We find the reasoning in these cases persuasive.
*544 ¶ 18 Therefore, in light of Colorado's pre-Apprendi jurisprudence and the holdings of other jurisdictions, we conclude that Apprendi and Blakely are not controlling, and therefore do not render the direct file statute unconstitutional on its face.
III. Speedy Trial
¶ 19 Valles asserts that the trial court violated his statutory and constitutional rights to a speedy trial by granting the prosecution a continuance six weeks beyond his statutory speedy trial date. We disagree.
A. Standard of Review
¶ 20 We review a trial court's denial of a motion to dismiss for violation of speedy trial rights as a mixed question of law and fact. People v. Glaser, 250 P.3d 632, 636 (Colo.App.2010). Thus, we will not disturb the trial court's factual findings underlying its speedy trial decision if those findings are supported by the record. Id . However, we review de novo the trial court's application of those facts to the controlling legal standard. Id .
¶ 21 We review a trial court's grant of a continuance pursuant to section 18-1-405(6)(g)(I), C.R.S.2012, for an abuse of discretion. People v. Scialabba, 55 P.3d 207, 209 (Colo.App.2002).
B. Relevant Facts
¶ 22 Prior to Valles's first trial, the prosecution moved to depose Cummings as a witness, pursuant to Crim. P. 15, because he was about to be deployed to Iraq and would be unavailable for trial. The trial court granted the motion, and a videotaped deposition was taken. During the deposition, Cummings testified that he was in the car with Valles when the shooting occurred and that Valles was the only person who shot at the rival gang's car. On cross-examination, Valles's attorney asked numerous questions attacking Cummings's credibility.
¶ 23 Notwithstanding his expected absence, Cummings was available to testify at Valles's first trial. Cummings's testimony at the first trial was substantially similar to his deposition testimony.
¶ 24 Because of the hung jury in the first trial, the trial court scheduled a second jury trial for November 27, 2007. However, the prosecution moved to continue the jury trial and extend Valles's speedy trial deadline pursuant to section 18-1-405(6)(g)(I). Specifically, the prosecutor explained that (1) Cummings was a critical witness because he was one of two witnesses who were in the same car as Valles when he fired the shots; (2) he was deployed in Iraq; (3) the prosecutor had spoken with Cummings's commanders and parents in an attempt to ascertain his availability to testify; (4) his commanders stated that he would "absolutely not be able to return to the United States" for the November 27, 2007 trial; (5) his commanders and parents both stated that he would be back in the United States sometime in January 2008, but the exact date of his return was uncertain; and (6) his "deposition would be an inadequate substitute for [his] live testimony," because his credibility was at issue. Accordingly, the prosecution requested the trial court to reschedule the jury trial for February 2008, when there would be a "virtual certainty" that Cummings would be available to testify.
¶ 25 Following a hearing on the prosecution's motion, the trial court found that (1) the evidence-specifically, Cummings's live testimony-was unavailable; (2) the evidence was material to the prosecution's case; (3) the prosecution had exercised due diligence in attempting to secure the evidence; and (4) there were reasonable grounds to believe the evidence would be available by February 2008. Accordingly, the trial court vacated the November 27, 2007 trial date, but ordered the prosecution to appear on that date with more details on Cummings's exact return date.
¶ 26 On November 27, 2007, the prosecution informed the trial court that Cummings would be available to testify beginning January 17, 2008. Accordingly, the trial court set Valles's trial date for January 29, 2008.
¶ 27 Before the second trial began, Valles moved to dismiss the charges against him based on a violation of his statutory and *545 constitutional speedy trial rights. The trial court denied the motion.
¶ 28 Cummings testified in person at the second trial, which commenced on January 29, 2008. However, his testimony did not differ substantially from his deposition testimony or his testimony in the first trial.
C. Statutory Speedy Trial
¶ 29 Section 18-1-405(1) provides a defendant a statutory right to be brought to trial within six months from the date he or she enters a not guilty plea. Similarly, subsection (6)(e) of the statute requires a new trial within three months of a declared mistrial. Generally, where a trial is not brought within these periods, the charges against the defendant must be dismissed. § 18-1-405(1) ; see also People v. Roberts, 146 P.3d 589, 592 (Colo.2006).
¶ 30 However, the statute provides an exception. Pursuant to section 18-1-405(6)(g)(I), an additional delay of up to six months is allowed at the request of the prosecution, without the consent of the defendant, if the prosecution demonstrates (1) that evidence material to the state's case is unavailable, (2) that the prosecution has exercised due diligence to obtain the evidence, and (3) that there exist reasonable grounds to believe the evidence will be available at a later date. The prosecution has the burden of proving that the elements of the exception have been met. Roberts, 146 P.3d at 595. In ruling, the trial court may rely on the prosecution's uncontested offers of proof. Id .
¶ 31 Here, we conclude that the trial court did not abuse its discretion by finding that the prosecution had met each of these elements for the following reasons:
1. Unavailability of Material Evidence
¶ 32 Valles asserts that the prosecution failed to demonstrate that Cummings's live testimony was material, and thus, "unavailable" under the speedy trial statute. We disagree.
¶ 33 For purposes of the speedy trial statute, "material" evidence is evidence that is "more than merely probative or relevant." Id. at 593. However, "[i]t is not necessary that [the material evidence] be absolutely indispensable to justify a reasonable delay." People v. Koolbeck, 703 P.2d 673, 676 (Colo.App.1985). Thus, to determine whether evidence is "material," the trial court must balance the prejudice to the state's case caused by the absence of the evidence against the prejudice to the defendant's statutory right to a speedy trial caused by the continuance. Roberts, 146 P.3d at 593.
¶ 34 Here, Valles asserts that the deposition testimony and transcripts from the first trial were adequate substitutes for live testimony, and therefore Cummings's live testimony was not material.[3]
¶ 35 We conclude, however, that the record supports the trial court's determination that Cummings's live testimony was material. Cummings was a former gang member whose credibility had been attacked in both his deposition and the prior trial. Therefore, the prosecution argued, and the trial court could reasonably conclude, that a jury could find Cummings's live testimony to be more credible than a recorded version of the same testimony. Thus, although the deposition and prior trial testimony may have been constitutionally adequate evidence, it does not follow that it was the best evidence. Nor does it follow that Cummings's live testimony could not be considered material evidence. See generally People v. Scarlett, 985 P.2d 36, 42 (Colo.App.1998) ("[t]he prosecution is generally permitted to prove its case with the evidence it believes most probative," and it need not agree to a defendant's proposed stipulations where doing so may harm its case).
¶ 36 Additionally, the record supports the trial court's conclusion that Cummings's testimony was central to the prosecution's case. According to the prosecution's motion, Cummings was one of two witnesses who could testify that they were in the car with Valles *546 when shots were fired and could identify Valles as the shooter. Although other witnesses identified Valles as the shooter, only one other witness was actually in the car with him. Finally, Cummings was able to testify regarding the events leading up to the shooting. Accordingly, we conclude that without Cummings's live testimony, the jury may have ascribed less credibility to Cummings's recorded testimony, and the prosecution's case may have been significantly prejudiced. Roberts, 146 P.3d at 593. Further, as discussed below, the prejudice caused to Valles by the delay in the trial was minimal. Therefore, we conclude that the unavailable evidence was material for the purposes of section 18-1-405(6)(g)(I). See Roberts, 146 P.3d at 593.
2. Due Diligence
¶ 37 Valles contends that the prosecution did not demonstrate due diligence in securing Cummings's live testimony because it did not directly contact Cummings. We disagree.
¶ 38 "Reliance on informal and highly uncertain procedures to obtain the presence of essential witnesses, even if customary, does not amount to due diligence," for the purposes of section 18-1-405(6)(g)(I). People v. Wolfe, 9 P.3d 1137, 1142 (Colo.App.1999). However, where an unavailable witness demonstrates a history of cooperation with the prosecution, the prosecution is not required to attempt to secure the witness's presence with a subpoena in order to demonstrate due diligence. See Scialabba, 55 P.3d at 209 (no subpoena required to demonstrate due diligence where the record showed that the prosecution's witness would have appeared but for her extended pregnancy).
¶ 39 Here, the prosecution stated that it had contacted Cummings's parents and commanding officers in an attempt to secure his testimony and obtain a return date. Cummings had earlier demonstrated his willingness to testify by submitting to the deposition and testifying in the prior trial. Additionally, the prosecution successfully secured his presence through similar means during the previous trial. Accordingly, the record supports the trial court's conclusion that the prosecution's attempts to secure Cummings's presence amounted to due diligence.
3. Availability at a Later Date
¶ 40 Valles asserts that the prosecution failed to show with any certainty that Cummings would be available to testify in person at some later date. Specifically, he cites to portions of the record where the prosecution stated that Cummings "might" return to the United States in January 2008, and that "the exact date of his return [was] uncertain." We disagree.
¶ 41 The prosecution must prove with some certainty that the unavailable evidence will become available at a later date. § 18-1-405(6)(g)(I) ; see also Marquez v. Dist. Court, 200 Colo. 55, 58, 613 P.2d 1302, 1304 (1980).
¶ 42 Although the prosecution was unsure of the exact day on which Cummings would return and was unsure whether he would return in January 2008 at the time it moved to continue, it stated in its motion that "there [was] a virtual certainty that Cummings" would return by February 2008. Valles did not present evidence to challenge this statement, or otherwise show that there was no reasonable belief that Cummings would return by February 2008. Additionally, the prosecution presented an exact date on which Cummings would return at the November 27, 2007 hearing. Accordingly, the trial court acted within its discretion by relying on the prosecution's offer of proof and by finding that there was a reasonable possibility Cummings would be available to testify.
¶ 43 Thus, the record supports the trial court's findings that (1) Cummings's live testimony was unavailable material evidence, (2) the prosecution used due diligence to secure it, and (3) it would be available at a later date. Therefore, we conclude that the trial court did not abuse its discretion by extending Valles's statutory speedy trial date and granting the prosecution's requested continuance. Accordingly, we conclude that the trial court did not violate Cummings's statutory right to a speedy trial.
*547 D. Constitutional Speedy Trial
¶ 44 Defendants have a constitutional right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution. U.S. Const. amend. VI ; People v. Small, 631 P.2d 148, 154 (Colo.1981). This right "is distinct from the statutory speedy trial right and the determination as to one does not necessarily dispose of the other." People v. Harris, 914 P.2d 425, 430 (Colo.App.1995).
¶ 45 A defendant bears the burden of showing that his or her constitutional right to a speedy trial was violated. Id . Whether a defendant's right has been violated depends on a balancing test that examines (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his or her right to a speedy trial, and (4) the prejudice to the defendant. Wolfe, 9 P.3d at 1143.
¶ 46 The constitutional right to a speedy trial attaches when formal charges are filed. People v. Fears, 962 P.2d 272, 279 (Colo.App.1997). Here, Valles was charged in January 2006, approximately two years prior to his second trial. Accordingly, the total delay between his initial charge and his conviction was approximately two years. See Moody v. Corsentino, 843 P.2d 1355, 1364 (Colo.1993) (calculating delay for constitutional speedy trial analysis from the date of arrest to the "final resolution" of the corresponding charges); Glaser, 250 P.3d at 643 (in a constitutional speedy trial analysis, the calculation of the length of delay includes time accrued between mistrials).
¶ 47 While a two-year delay is presumptively prejudicial, Doggett v. United States, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (delays approaching one year are generally considered presumptively prejudicial), it is not necessarily determinative regarding whether Valles's constitutional rights were violated. See Fears, 962 P.2d at 279 (defendant's constitutional right not violated by three-year delay between charge and trial).
¶ 48 Under the second factor of the constitutional test, Valles alleges that the period required for the prosecution's continuance to secure Cummings's live testimony constituted unjustified delay. He does not allege that any other portion of the two-year delay was unjustified. However, as discussed above, the continuance was not erroneous. Additionally, this allegedly unjustified delay only lasted approximately six weeks - a relatively small portion of the two years between the initial charge and the conviction.[4]
¶ 49 Under the third prong of the test, Valles asserted his constitutional speedy trial rights in the trial court. However, although his motion to dismiss alleged that he had been denied his constitutional right to a speedy trial, he did not expand upon that argument in his motion. See id . Additionally, on at least two occasions, Valles voluntarily made limited waivers of his right to a speedy trial in connection with other continuances.[5] See United States v. Drake, 543 F.3d 1080, 1086 (9th Cir.2008) (waiver of a defendant's right to a speedy trial cuts against subsequent invocations of that right). Accordingly, although Valles strongly asserted his statutory right to a speedy trial, his assertion was tempered by his earlier waivers.
¶ 50 Finally, under the fourth prong, Valles has not established that he suffered prejudice as a result of the delay. The constitutional right to a speedy trial serves three interests: (1) the prevention of oppressive pretrial incarceration, (2) the minimization of anxiety and concern of the accused, *548 and (3) the limitation of the possibility the defense will be impaired. Barker v. Wingo, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id .; see People v. McGlotten, 166 P.3d 182, 185 (Colo.App.2007). Valles does not allege that the delay prejudiced the preparation and presentation of his defense. However, he was in pretrial incarceration for the entire two-year period leading up to his conviction. Nevertheless, he does not allege that this pretrial incarceration was unjustified or overly oppressive, or that the delay caused him more anxiety or concern than the average criminal defendant. See Drake, 543 F.3d at 1086.
¶ 51 Weighing the above four factors, we conclude that the trial court did not err by denying Valles's motion to dismiss for violation of his constitutional right to a speedy trial. Although Valles arguably suffered some prejudice from the delay, and did assert his rights to an extent, the totality of the above considerations weighs against finding a constitutional violation.
IV. Statements Against Interest
¶ 52 Valles asserts that the trial court abused its discretion and violated his rights under the Confrontation Clauses of the United States and Colorado Constitutions by admitting hearsay evidence that exculpated the coconspirator-declarant and inculpated Valles. We disagree.
A. Standard of Review
¶ 53 We review whether a trial court properly admitted hearsay evidence for an abuse of discretion. People v. Phillips, 2012 COA 176, ¶ 91, 315 P.3d 136, 2012 WL 5266041. "We review de novo a defendant's contention that the trial court violated his or her Confrontation Clause rights." Id . at ¶ 85.
B. Relevant Facts
¶ 54 During the second trial, the prosecution elicited testimony from Hector Castillo Sr.-the father of Castillo Jr.-regarding his phone call with his son two days after the shooting. According to Castillo Sr., Castillo Jr. told him about the details of the shooting and explained the damage that had occurred to Castillo Sr.'s car as a result. Specifically, Castillo Jr. told his father that while he was driving his car with Valles and the other gang members, they came across the other gang's car. He also said that Valles then shot at the other car, causing damage to one of the windows on Castillo Sr.'s car.
¶ 55 Valles objected to the introduction of Castillo Jr.'s statement, arguing that it was inadmissible hearsay. However, the trial court overruled the objection, concluding that the statement fell within the hearsay exception allowing the introduction of statements against self-interest.
C. Federal Confrontation Clause
¶ 56 The United States Constitution's Confrontation Clause prohibits the introduction of "testimonial statements absent the unavailability of the declarant and a prior opportunity for cross-examination by the defendant." Hinojos-Mendoza , 169 P.3d at 665 (citing Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ). Here, both parties agree that Castillo Jr.'s statement was nontestimonial. Accordingly, the United States Constitution's Confrontation Clause is not implicated in this case. See Phillips, ¶ 78 ("If the hearsay statement is nontestimonial, the federal Confrontation Clause is not implicated, and we need only address whether the statement is admissible under our state evidentiary rules." (citation omitted)).
D. Hearsay Analysis
¶ 57 Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay is not admissible unless it is offered pursuant to an exception. CRE 802. Pursuant to CRE 804(b)(3), hearsay may be admitted, in a criminal trial, if it is made by a declarant who is unavailable to testify and it is
*549 [a] statement that ... a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it ... had so great a tendency ... to expose the declarant to civil or criminal liability; and ... [it] is supported by corroborating circumstances that clearly indicate its trustworthiness.
In People v. Newton, 966 P.2d 563 (Colo.1998), the supreme court articulated a three-part test to determine whether a hearsay statement inculpating the defendant may be admitted pursuant to CRE 804(b)(3), while simultaneously complying with the Colorado Constitution's Confrontation Clause. Under this test, first, the declarant must be unavailable pursuant to CRE 804(a). Newton, 966 P.2d at 576. "Second, the statement must tend to subject the declarant to criminal liability. On this point, the trial court must determine whether a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." Id . Third, the prosecution must show by a preponderance of the evidence that the circumstances surrounding the statement demonstrate its trustworthiness. Id .
¶ 58 Under this third inquiry, "the court should consider when and where the statement was made, what prompted the statement, how the statement was made, and the substance of the statement." People v. Jensen, 55 P.3d 135, 138 (Colo.App.2001). Additionally, the court should consider "the nature and character of the statement, the relationship between the parties to the statement, the declarant's probable motivations for making the statement, and the circumstances under which the statement was made." Bernal v. People, 44 P.3d 184, 197 (Colo.2002). Finally, "although the most important determination regarding trustworthiness is whether the statement is genuinely self-inculpatory or whether it shifts blame to the defendant, this determination is not dispositive." Id .
¶ 59 Here, both parties agreed that Castillo Jr. was unavailable to testify. Accordingly, the first prong of the Newton test was satisfied.
¶ 60 Regarding the second prong, Valles asserts that Castillo Jr.'s statement was not against his penal interest, but, rather, was a self-serving statement made in order to escape criminal liability. Thus, Valles asserts that a reasonable person in Castillo Jr.'s position might make such a statement regardless of its truth, in order to distance himself or herself from the murder. We disagree.
¶ 61 Although Castillo Jr. denied having shot at the other car, and instead inculpated Valles, his statement still could subject him to criminal liability as an accomplice to first degree extreme indifference murder - a charge carrying significant consequences. See generally Williamson v. United States, 512 U.S. 594, 603, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (statement that implicates the declarant in a criminal conspiracy may satisfy the requirements of the federal counterpart to CRE 804(b)(3)). It is unlikely that a reasonable person, attempting to escape criminal liability, would make such a self-incriminating statement. Further, as discussed below, the circumstances surrounding the statement demonstrate its veracity. Cf. Newton, 966 P.2d at 579 (hearsay statement that inculpates the declarant as an accessory to robbery, and inculpates the defendant as the robber, is admissible if the surrounding circumstances show that the statement was reliable). Accordingly, the second prong of the Newton test was satisfied.
¶ 62 Regarding the third prong, Valles asserts that the prosecution failed to prove that the circumstances surrounding the statement demonstrated its trustworthiness. Specifically, relying on Lilly v. Virginia, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), he asserts that as a matter of law an accomplice's statements are presumptively unreliable when they shift blame away from the declarant and onto the defendant. We disagree with Valles's assertions and conclude that Lilly is distinguishable.
¶ 63 In Lilly, the Supreme Court considered whether an accomplice's confession to police officers was admissible hearsay where the confession inculpated both the declarant and the defendant.
*550 Id . at 120, 119 S.Ct. 1887. There, the accomplice confessed to committing robberies with the defendant, but denied participation in a murder that he claimed the defendant committed alone. Id . at 120-21, 119 S.Ct. 1887. The Lilly Court concluded that the admission of the statement violated the defendant's confrontation rights, because it was inherently unreliable. Id . at 131, 119 S.Ct. 1887. The Court reasoned that "when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination." Id . at 132, 119 S.Ct. 1887 (quoting Lee v. Illinois, 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) ).
¶ 64 Lilly is distinguishable from this case, because, here, Castillo Jr.'s statement was not a custodial confession, and was not made to garner favor for himself in the eyes of law enforcement officials. See Stevens v. People, 29 P.3d 305, 313 (Colo.2001) (recognizing such a distinction), overruled on other grounds by People v. Fry, 92 P.3d 970 (Colo.2004). Rather, Castillo Jr. made the statement to his father to explain what happened on the night of the shooting, and how his father's car became damaged.[6] Accordingly, the statement was not inherently unreliable under Lilly .
¶ 65 We further conclude that the following facts in the record support the conclusion that the prosecution proved the trustworthiness of the statement by a preponderance of the evidence: (1) Castillo Jr. voluntarily made the statement to his father, rather than to law enforcement officials; (2) nothing in the record suggests that his motivation in making the statement was to escape criminal liability; (3) the record does not suggest that Castillo Jr. would have expected his father to pass his statements on to law enforcement officials; and (4) Castillo Sr. described his son as "excited" and "scared" during their conversation, and he seemed "affected" by what had happened.
¶ 66 Finally, although we recognize that Castillo Jr.'s statement arguably shifted blame to Valles, we conclude that the totality of the surrounding circumstances demonstrates the trustworthiness of the statement. See Bernal, 44 P.3d at 197.
¶ 67 Accordingly, the third prong of the Newton test was satisfied. Thus, the trial court did not abuse its discretion by admitting the hearsay statement pursuant to CRE 804(b)(3). Further, because we conclude that the statement was admissible pursuant to CRE 804(b)(3), we necessarily conclude that its admission did not violate Valles's rights under the Confrontation Clause of the Colorado Constitution, which requires that a hearsay statement carry some indicia of reliability before being admitted into evidence. Phillips, ¶ 83 (where evidence is nontestimonial, "the only question remaining for the purposes of our state Confrontation Clause analysis is whether the statement is reliable, a question which is answered through the analysis of admissibility under our state rules of evidence").
V. Sentencing
¶ 68 Valles asserts that the trial court erred by sentencing him to life without the possibility of parole, because the sentence was unconstitutional pursuant to Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). We agree.
A. Standard of Review and Preservation
¶ 69 We review de novo the constitutionality a trial court's sentencing determination. People v. Banks, 2012 COA 157, ¶ 115, 412 P.3d 417, 2012 WL 4459101.
¶ 70 Valles did not raise the constitutionality of his sentence in the trial court. Accordingly, the issue is not preserved. Hinojos-Mendoza, 169 P.3d at 667. Nevertheless, we exercise our discretion to address this issue, because doing so will promote efficiency and judicial economy. See Banks, ¶¶ 116-17 (reviewing a similar unpreserved challenge).
*551 B. Discussion
¶ 71 The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment and "guarantees individuals the right not to be subjected to excessive sanctions." Miller, 567 U.S. at 469, 132 S.Ct. at 2463 (quoting Roper v. Simmons, 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) ). In Miller, the Supreme Court held that, "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Id . at 479, 132 S.Ct. at 2469. The Miller Court held that in order to sentence a juvenile to life without parole, the court must conduct an individualized sentencing determination that "take[s] into account how children are different [from adults], and how those differences counsel against irrevocably sentencing them to a lifetime in prison." Id .
¶ 72 In Banks, a division of this court held that under Miller, the statutory scheme under which Valles was sentenced was unconstitutional as applied to minors. Banks, ¶ 123. The division then applied Colorado's general severability clause, codified in section 2-4-204, C.R.S.2012, to the sentencing statute. Id . at ¶ 131. The Banks division concluded that the remaining statutory framework required courts to sentence juveniles convicted of class one felonies committed after July 1, 1990 to life with the possibility of parole after forty years. Id . at ¶ 131. Accordingly, the division "affirm[ed the] defendant's sentence as to life imprisonment but vacate[d] it to the extent he is denied the possibility of parole, and remand[ed] the case to the trial court to modify the sentence by including a provision for the possibility of parole after forty years." Id .
¶ 73 Here, both parties agree that the trial court erred in sentencing Valles to life without parole pursuant to a mandatory sentencing scheme. However, they disagree as to the proper remedy. The prosecution asserts that we should follow the division's decision in Banks and remand to the trial court to amend Valles's sentence to allow for the possibility of parole after forty years. Conversely, Valles asserts that the division in Banks improperly applied the severability statute to the sentencing scheme, and that on remand the trial court should conduct an individualized sentencing determination.[7]
¶ 74 We agree with the parties that Valles's sentence is unconstitutional pursuant to Miller . However, we decline to depart from the division's well-reasoned decision in Banks . Accordingly, we affirm defendant's sentence as to life imprisonment but vacate it to the extent it denied him the possibility of parole. Thus, on remand, the trial court should sentence Valles to life in prison with the possibility of parole after forty years pursuant to Banks and Miller .
¶ 75 Valles's conviction is affirmed, the sentence is vacated, and the case is remanded for resentencing pursuant to this opinion.
JUDGE GRAHAM and JUDGE HAWTHORNE concur.

Even if Valles did not preserve his constitutional challenge by failing to request a ruling on his motion, we could still consider the merits of his assertion as a matter within our discretion. See Hinojos-Mendoza , 169 P.3d at 667 (unpreserved facial challenge to statute may be considered for the first time on appeal); see also People v. Allman, 2012 COA 212, ¶¶ 13-15, 321 P.3d 557, 2012 WL 6055566 (recognizing unresolved question in Colorado regarding whether an appeals court may consider unpreserved constitutional challenges in criminal cases).

Since Valles's conviction, the legislature has amended portions of the direct file statute on three occasions. See Ch. 128, sec. 1, § 19-2-517, 2012 Sess. Laws 439; Ch. 264, sec. 1, § 19-2-517, 2010 Sess. Laws 1199; Ch. 320, sec. 1, § 19-2-517, 2008 Sess. Laws 1506.

Both parties agree that Cummings's live testimony is the evidence at issue. The parties further agree that the content of Cummings's testimony was both material and available, because it was preserved in the deposition and prior trial's transcripts.

We also note that prior to the first trial, the court granted Valles's motion to continue, which resulted in the trial being delayed from May 1, 2007 to August 28, 2007 - a delay of 134 days. See United States v. Mendoza, 530 F.3d 758, 764 (9th Cir.2008) (a defendant's requests for continuances may weigh against finding a constitutional speedy trial violation).

Specifically, on December 7, 2006, Valles waived his right to speedy trial in relation to an unopposed motion by the prosecution for a continuance of the trial date. The waiver specified that Valles consented to having his trial continued to commence no later than six months from the date of the waiver. On April 19, 2007, Valles moved the court for a continuance of his trial. In his motion, he stated that he was "willing to waive speedy trial."

Castillo Sr. testified that, prior to speaking with his son, he had heard from others that Castillo Jr. had been involved in a shooting. He explained that Castillo Jr. told him that he needed "to tell [him] the truth [about] what happened."

We read Valles's brief to also assert that Banks was incorrectly decided, because Miller requires an individualized sentencing hearing in every case involving the sentencing of a juvenile. However, Valles does not expand upon this argument beyond making a conclusory assertion unsupported by legal authority or citation. Accordingly, we decline to consider the assertion. See People v. Roberts, 2013 COA 50, ¶ 18 n. 4, 321 P.3d 581, 2013 WL 1459739.